*In re* MARRIAGE OF FRANCES DELORES HOBBS, Petitioner-Appellant and Cross-Appellee, and JAMES HOBBS, Respondent-Appellee and Cross-Appellant.

Third District   No. 82—111

Opinion filed November 18, 1982.

Mary Lynn Angel May, of Gilchrist & May, of Walnut, for appellant.

Watts C. Johnson, of Johnson, Martin & Russell, of Princeton, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Petitioner Frances Delores Hobbs filed a petition for dissolution of her marriage to respondent James Hobbs. After a bifurcated hearing, the circuit court of Bureau County dissolved the marriage and entered the various awards from which this appeal and cross-appeal are taken.

The Hobbs were married on June 14, 1958. Petitioner, 45, is employed as a factory worker for Grayline Housewares and earns approximately $168 per week. With 10 years of schooling, she came to the United States from Ireland in 1957 to serve as a domestic. After her marriage a year later, and with respondent's consent, petitioner terminated her employment as a sales clerk. During the early years of the marriage, she was homemaker to the family unit of five and primarily responsible for raising three children and performing household tasks, including canning, gardening, and yard maintenance. During the later years of the marriage, she remained primarily responsible for these tasks while at the same time working 10 to 12 hours a day in a restaurant which, contrary to her wishes, respondent had decided to purchase. Petitioner lives in a 2½-room apartment consisting of a living room with a pull-out bed, small kitchen, and bath. It is uncontested that she has no automobile, a used black-and-white television, and buys only used clothing from garage sales or a resale shop. Nonetheless petitioner's weekly expenses of $140 exceed her net income of $139.79.

Respondent, 49, is employed as a supervising communications technician for the Illinois State Police and earns approximately $378 per week in that capacity. Throughout the marriage, he customarily maintained part-time employment from which he most recently earned an additional $24 per week. Respondent has had two years of specialized training in electronics and served as a radio operator in the Air Force. He lives in the six-room former marital residence with the Hobbs' minor daughter, owns an automobile, and recently purchased a new color television set. Other facts will be set forth in our discussion of the issues to which they are germane.

Before we may consider those issues, we must first turn to re-

spondent's motion to dismiss this appeal. Respondent so moves on the basis of several transactions into which the parties have entered. Since the trial court's judgment, respondent has taken out a $10,000 second mortgage on the former family home, paid petitioner's attorney $2,500, and paid petitioner $12,500. The latter amount represents the court's award to petitioner less the allegedly approximate value of the child support she was ordered to pay. Respondent contends that, pursuant to the doctrine of release of errors, this appeal must now be dismissed.

■■■ The doctrine of release of errors provides that a party to a divorce decree cannot accept those portions of the decree which are beneficial to him and afterward prosecute on appeal to reverse those parts which are unfavorable to him, where to do so would place the opposing party at a distinct disadvantage upon a reversal of the decree. (*Sullivan v. Sullivan* (1979), 68 Ill. App. 3d 242, 385 N.E.2d 860 and *Kissin v. Kissin* (1961), 29 Ill. App. 2d 126, 172 N.E.2d 635.) However, in such cases as *Royster v. Hammel* (1977), 51 Ill. App. 3d 710, 366 N.E.2d 535, and *Pearson v. Pearson* (1976), 42 Ill. App. 3d 522, 356 N.E.2d 993, it has been held that where an appellant accepts a share of the proceeds of jointly owned property no benefit is being accepted under the decree since the appellant is merely exchanging interests. Furthermore, according to such cases, the appellee sustains no particular disadvantage, consequently no reason exists for discontinuing the appeal.

■ We believe the application of the rule as in *Royster v. Hammel* (1977), 51 Ill. App. 3d 710, 366 N.E.2d 535, is applicable to this case since the appellant's delivery of a quitclaim deed and acceptance of $12,500 represented a transfer of her joint interest in the property and the transaction rather than being of any disadvantage to the appellee was advantageous to him. Unlike *Boylan v. Boylan* (1932), 349 Ill. 471, 182 N.E. 614, the appellee paid the attorney fees directly to appellant's counsel, a circumstance which was also held in *Lemon v. Lemon* (1958), 14 Ill. 2d 15, 150 N.E.2d 608, to render inapplicable the release of errors rule. Accordingly, we deny the appellee's motion to dismiss the appeal.

The first of the three issues we today address is whether the trial court abused its discretion in its division of marital property. Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)) provides in part that the court:

"shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

\* \* \*

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

\* \*.\*

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income."

In this cause, petitioner was primarily responsible for raising three children and performing all domestic tasks. She additionally canned, gardened, and maintained the yard. She had no domestic help. When respondent purchased a restaurant, she worked 10 to 12 hours a day outside the home, while continuing her at-home duties. The parties were married for approximately 23 years. Upon the division of property, petitioner would receive $15,500 and respondent, the custodial parent, would receive the family home and all other marital assets awarded by the court. Petitioner is 45, has 10 years of schooling and no specialized skills, and earns $168 per week. Respondent is 49, has two years of specialized training in electronics, has been employed by the State since 1961, and earns $402 per week. Respondent apparently is in good health while petitioner has had recent health problems, at least one requiring hospitalization. The apportionment was not expressly in lieu of, nor in addition to, maintenance. With respondent earning well over twice petitioner's earnings, and having accumulated what the court presently valued at $13,000 to $18,000 in retirement benefits, he would appear to have the superior opportunity for acquiring future assets and income. Petitioner has no parallel opportunity. It is possible she may eventually qualify for pension benefits, but this is speculative. As respondent's pension is not coordinated with social security, petitioner's possible future benefits from that pro-

gram will be based on her own earnings.

The Hobbs' principal asset was the marital home. It was appraised at $54,500, had a mortgage debt of approximately $15,000, and contained six rooms of apparently unappraised furniture and appliances owned by the parties. In addition to the aforementioned pension benefits, to which we shall return, the Hobbs' assets also included a contract action, valued by respondent at $15,000; a 1976 Plymouth Scamp, valued by respondent at $2,000; mutual fund shares, valued by respondent between approximately $505 and $758; a life insurance policy, valued by respondent at $328; and savings of $2,457, two months after the parties separated. Accepting the court's valuation of the pension benefits and respondent's valuation of the other assets, the net marital estate totaled between $72,790 and $78,043.

Before proceeding to a discussion of the trial court's overall disposition of marital property, we first consider the matter of the court's valuation and disposition of respondent's pension benefits. As mentioned previously, the court found that the benefits had a present value of $13,000 to $18,000 and, pursuant to petitioner's present cash award, respondent was awarded the future benefits. The valuation of the pension was contested by petitioner, but due to our disposition of the matter, we need not reach the question of valuation nor its attendant procedural issues.

■ Appellate decisions of this State have established that pension rights, whether matured, vested or not vested, contributory or noncontributory, are property under section 503 of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 503). (See *In re Marriage of Bodford* (1981), 94 Ill. App. 3d 91, 92, 418 N.E.2d 487, 488.) Where one spouse has acquired a right to potential pension benefits, there is no way the other spouse may be awarded a defined interest in the benefits without a determination of their value (*In re Marriage of Evans* (1981), 85 Ill. 2d 523, 426 N.E.2d 854), at least in the case of a present award based on the discounted value of the future payments. This presents a problem when the actual value of the benefits depends on future contingencies.

An excellent discussion of this problem and a well-conceived solution to it are found in *In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470. As the *Fairchild* court concluded:

> "The dilemma, then, is that while it is unfair to ignore the value of nonvested benefits in the division of marital property, those benefits in some instances being the only significant marital asset, it is also unfair to effect a present division of the marital property utilizing an actuarial value of those benefits

computed in reliance on speculative, albeit actuarily accepted assumptions. Numerous authorities have suggested a solution to this dilemma.

> '[R]eserving jurisdiction over the future benefits and effecting a subsequent division of the actual monetary benefits had the dual advantage of allocating equally between the parties the risk that the rights may never vest and enabling the court to better determine the actual proportion of future benefits that accrued to each party during the marriage.' (Keating, *Recent Decision*, 70 Ill. B. J. 582, 585 (1982).)" (*In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 475.)

A similar concept had been suggested earlier:

> "In those instances where it is difficult to place a present value on the pension or profit-sharing interest due to uncertainties regarding vesting or maturation, or when the present value can be ascertained but the type, or lack, of other marital property makes it impractical or impossible to award sufficient offsetting marital property to the nonemployee spouse, then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid 'if, as and when' the pension becomes payable. (*In re Marriage of Brown* (1976), 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633; Kalcheim, *Marital Property, Tax Ramifications, and Maintenance: Practice Under the Illinois Marriage and Dissolution of Marriage Act—A Comparative Study*, 66 Ill. B.J. 324, 335 (1978); 42 Mo. L. Rev. 143, 150 (1977).)" (*In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 663, 397 N.E.2d 511, 519.)

It can be seen that both solutions share the common advantage of dividing the pension benefits at a time when, at least in terms of periodic payments, they are certain. Given this common advantage, we direct the trial court, upon the necessary remand of this cause, to reserve jurisdiction over the future benefits. Whether it makes a present percentage allocation of those benefits, or reserves this decision for the future, is left to the court's sound discretion.

■ Returning to the trial court's overall distribution of marital property, we note that even while disregarding the furniture, appliances, and pension benefits in the marital estate, petitioner's award is approximately 26% of the estate. While the division of property can never be reduced to pure numerics, we find, under the specific circumstances herein, the court's disposition was an abuse of discretion. Respondent reminds us that such a percentage award was upheld in

*In re Marriage of Borg* (1981), 96 Ill. App. 3d 282, 421 N.E.2d 214, and we agree that such an award might be totally appropriate in a given situation. Here, however, the factors we have previously articulated do not present such a situation. We also note parenthetically that the *Borg* award to which respondent refers totalled approximately $177,500. On remand, we direct the court to increase petitioner's awarded share of marital property to a just proportion of the estate. In so doing, the court, in its discretion, may regard the parties' chose in action in the same fashion as the pension benefits.

■ The second issue is whether the trial court abused its discretion in failing to award all of the marital property. Section 503(a) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)) states that " 'marital property' means all property ***" and section 503(c) (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)) directs the court to "divide the marital property ***." Therefore the court abused its discretion in failing to do so.

■ The final issue we today address is whether the trial court abused its discretion in ordering respondent to pay $2,500 of petitioner's attorney fees. Those fees and costs totaled approximately $3,789. Petitioner prays for the total amount, while respondent cross-appeals on the ground the ordered amount is excessive. Section 508(a) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 508(a)) provides that, after considering the financial resources of the parties, the court may order a party to pay "a reasonable amount" for fees and costs "necessarily incurred." Without detailing the various arguments and counterarguments here made, we find the award to be well within the court's discretion.

Other assignments of error have been urged regarding child support, which the petitioner was ordered to pay, and maintenance, which she was denied. However, since these issues are related to and dependent upon the distribution of marital property, we believe it is inappropriate to review these issues in this appeal and express no opinions on the merits of the issues. They should be considered by the trial court in light of the reconsideration required by this opinion.

Accordingly, the judgment of the circuit court of Bureau County is affirmed in part, reversed in part, and remanded with directions for further proceedings consistent with the views herein.

Affirmed in part, reversed in part, and remanded with directions.

ALLOY and SCOTT, JJ., concur.