*In re* MARRIAGE OF SUSAN LOUISE ZIEMER, n/k/a Susan Louise Walker, Petitioner-Appellee, and MILO JOSEPH ZIEMER, Respondent-Appellant.

Fourth District   No. 4—89—0134

Opinion filed October 5, 1989.

Johnson, Frank, Frederick & Walsh, of Urbana (Gregory L. Ryan, of counsel), for appellant.

Monroe, Wilson, Dyar, Moss & Statzer, of Decatur, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On September 1, 1988, this court affirmed a trial court order which restricted respondent Milo Ziemer's overnight visitation with

his daughter and ordered him to pay $250 in attorney fees. (*In re Marriage of Ziemer* (4th Dist. 1988), No. 4—88—0256 (unpublished order under Supreme Court Rule 23).) On October 6, 1988, Susan Ziemer, petitioner, filed a petition for fees incurred as a result of the appeal. Her attorney fees and costs in defending the appeal were $1,907.32. The trial court ordered Milo to pay $1,500 of that amount. Milo appeals arguing the trial court abused its discretion in that it did not adequately consider Susan's current husband's income, her income alone did not show an inability to pay the attorney fees, he was unable to pay fees, and the trial court erred in finding he had transferred property to avoid imposition of attorney fees.

We affirm.

The parties submitted statements of assets and liabilities. Although Susan had remarried, she prorated her and Mindy's expenses and did not include expense amounts for Steven Walker, her current husband. Susan had a net income from her employment of $820 per month. She received $300 per month from Milo as child support, though stated Milo's payments were sporadic. Milo admitted he was $844 in arrears in his payments. Susan and Mindy's monthly expenses were $1,080. Susan admitted the $175 car payment expense was deducted from Steven's check. Steven also gave her an additional $200 per week. However, she paid $65 of this money to support Steven's child.

Susan and Steven jointly owned a home valued at $33,000 with a $12,564 mortgage. They had $500 in equity in a separate parcel of real estate, with a $19,500 joint debt. They had several other joint debts. Milo listed $1,475 in monthly expenses and $3,401 in debts. He had been unemployed for the week prior to the hearing but expected to be reemployed. When working, he earned $18.75 per hour as an electrician with a weekly take-home pay of $506. When not working, he received $230 per week in unemployment compensation. In 1986 and 1987, respectively, Milo had an adjusted gross income of $35,039 and $33,724.

Milo admitted that during the prior appeal, he gave real estate to his father. Milo testified the real estate was worth $8,000. He admitted he had previously valued it at $20,000 and did not have any indebtedness regarding the real estate.

The trial court found Susan lacked sufficient financial resources to pay her attorney fees and Milo had the ability to pay the fees. It also found Milo dissipated assets by giving realty to his father. Milo had a good job as an electrician, though his work was seasonal. In denying Milo's motion for reconsideration, the court noted Milo's conduct ne-

cessitated Susan's legal proceedings to protect Mindy. The modification arose as a result of Milo's practice of showering with eight-year-old Mindy and sleeping in the same bed with her.

■■■ An award of attorney fees is a matter within the sound discretion of the trial court, and its decision will not be disturbed on appeal, absent an abuse of discretion. (*In re Marriage of Stockton* (1988), 169 Ill. App. 3d 318, 523 N.E.2d 573.) Attorney fees are the primary responsibility of the person for whom the services are rendered. (*In re Marriage of Rink* (1985), 136 Ill. App. 3d 252, 483 N.E.2d 316.) A person seeking an award of fees must establish that he is unable to pay the fees and the other party is able to pay them. (*Stockton*, 169 Ill. App. 3d 318, 523 N.E.2d 573; *In re Marriage of Westcott* (1987), 163 Ill. App. 3d 168, 516 N.E.2d 566.) It is not necessary that the spouse seeking fees be destitute; it is sufficient that the payment would exhaust his estate or strip him of his means of support or undermine his economic stability. (*In re Marriage of Piccione* (1987), 158 Ill. App. 3d 955, 956, 511 N.E.2d 1157, 1158.) The court may properly consider that one party's conduct precipitated the proceedings. *In re Marriage of Cotton* (1984), 103 Ill. 2d 346, 469 N.E.2d 1077.

■■ ■ Section 508(a) of the Illinois Marriage and Dissolution of Marriage Act provides that the court, after considering the financial resources of the parties, may order either spouse to pay the attorney fees necessarily incurred by the other spouse in defense of an appeal. (Ill. Rev. Stat. 1987, ch. 40, par. 508(a).) Milo argues the trial court abused its discretion because Steven's employment income was available as a resource for the payment of Susan's attorney fees. Therefore, Milo argues Susan does not lack the financial ability to pay her own fees. We find no authority for Milo's argument. Steven does not have a legal obligation to pay fees incurred by Susan in connection with proceedings regarding visitation between her daughter and her former husband. Additionally, we note the trial court did consider that Steven gave Susan $135 per week to use for expenses.

Milo next argues Susan's income exceeds her expenses; therefore, she is able to pay her own fees. Susan earned $820 per month. She was supposed to receive an additional $300 per month as child support. However, Milo's payments were sporadic, and Milo agrees he was in arrears in the child support payments. Susan and Mindy's expenses were approximately $1,080. If the court subtracts the automobile payment, Susan and Mindy's expenses are $905 per month. Susan's income would exceed her expenses by $215 if Milo paid child support. Milo's net monthly income when working was $2,177.60 and

monthly expenses of $1,475. Although Milo had not been working for a week prior to the hearing, he expected to return to work soon. His work was somewhat seasonal, although he was employed by a reputable firm. Additionally, Milo had given away an asset which was worth at least $8,000 and possibly worth $20,000.

Susan's total costs and fees were $1,907.32 of which Milo was ordered to pay approximately three-fourths, $1,500. A court of review will not substitute its judgment for that of the trial court in matters of discretion unless abuse of that discretion is found. The spouse seeking fees need not be destitute or exhaust her economic resources. (See *Piccione*, 158 Ill. App. 3d 955, 511 N.E.2d 1157.) The court properly considered that Milo's conduct necessitated legal proceedings to protect Mindy. (*Cotton*, 103 Ill. 2d 346, 469 N.E.2d 1077.) In *Cotton* the court, quoting *Kuhns v. Kuhns* (1972), 7 Ill. App. 3d 884, 886, 288 N.E.2d 884, 886, stated:

> " 'In determining whether an allowance of fees is proper, it is necessary to examine the circumstances which initiate the invocation of judicial proceedings for relief. ***
>
> It is clear that plaintiff, by her own misconduct, precipitated these post-decree proceedings. *** Although the record reveals that defendant is possessed of more income and assets than plaintiff, we believe that it would be inequitable and unfair to further punish defendant by requiring him to pay fees to plaintiff's attorneys.' " *Cotton*, 103 Ill. 2d at 362, 469 N.E.2d at 1085.

In determining a request for attorney fees, it is proper for the court to give consideration to who precipitated the need for the legal fees. That the action was initiated by Susan because of Milo's conduct does not require a different result. Likewise, defense of the appeal by Susan was necessitated by that same conduct. No abuse of discretion occurred in the instant case.

For the above reasons, we affirm the trial court.

Affirmed.

KNECHT and STEIGMANN, JJ., concur.