*In re* MARRIAGE OF SHEILA MANTEI, Petitioner-Appellant, and ADOLF MANTEI, Respondent-Appellee.

Fourth District   No. 4—90—0868

Opinion filed December 19, 1991.—Rehearing denied January 22, 1992.

Howard Feldman and Fredric Benson, both of Feldman & Wasser, of Springfield, for appellant.

Edward W. Huntley, of Morse, Giganti & Appleton, of Springfield, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The petitioner, Sheila Mantei, appeals from the judgment of the circuit court of Sangamon County dissolving her marriage to respondent, Adolf Mantei. The issues raised concern the valuation and distribution of respondent's pension, the sufficiency of the award of maintenance, and the refusal of the trial court to order the respondent to pay petitioner's attorney fees.

The petition for dissolution of marriage was filed in July 1986. Therein it was alleged petitioner (born March 24, 1944) and respondent (born July 2, 1940) were married in March 1964. The parties have three children: Mark (born September 23, 1964), Paul (born June 15, 1971), and Matthew (born December 2, 1975).

On October 24, 1989, the trial court dissolved the parties' marriage and reserved all other issues. On October 11, 1990, the trial court issued a memorandum of decision in which the issues previously reserved were addressed. The memorandum of decision recognized the parties had stipulated to a fair and reasonable division of some of the property. The court then proceeded to distribute the remaining assets and liabilities, assigning value to assets where the value was disputed. Respondent was ordered to pay $400 per month to petitioner as maintenance, commencing October 1990 and ending September 1993. At the direction of the trial court, an order of withholding was prepared and filed in November 1990. Each party was ordered to pay his or her own attorney fees and court costs because the trial court found the parties to be inflexible and uncompromising. Custody of Matthew was awarded to respondent, but because of petitioner's present inability to pay, she was not ordered to pay child support.

The first issue is whether the trial court committed an abuse of discretion in distributing and arriving at a value for the respondent's pension. The trial court concluded that because of petitioner's smaller earning capacity, she should get a larger share of the marital estate. The judge felt even more compelled to give her a larger share because of the valuation of the pension, which he found to be $25,851.61. After dividing the assets, the trial court noted the marital assets distributed to petitioner were "valued at approximately $9,000 more than those allocated to" respondent.

We agree with petitioner that the valuation of the pension resulted from an abuse of discretion. Respondent's financial affidavit indicates

his equity in the retirement fund is $25,851.61. The same dollar amount is indicated for its present value.

Thomas Langford was called as a witness on behalf of petitioner. Respondent did not challenge his qualifications to testify regarding the value of respondent's pension. Langford testified that the present cash value as of October 24, 1989 (the date of dissolution), of the annuities respondent would receive upon retirement at age 60 was $77,846.73. Based on current statutory benefits, respondent would begin receiving monthly payments of $1,636.03 commencing July 2, 2000, and those payments would increase by 3% each year beginning January 1, 2002. In arriving at the present cash value, Langford assumed a long-term interest rate of 8.015% per year. That figure is based on the annual average of the effective yield of Treasury notes and bonds as of January 2, 1990, as reported in the Wall Street Journal. He admitted on cross-examination that he did not have available at the time of testifying the rate as of October 24, 1990, and that a different rate as of that date would have resulted in a different valuation.

There was also evidence that the surviving spouse's benefit in the pension was valued at $18,280.13. Langford admitted there had to be a surviving spouse to have a surviving spouse's annuity. Based on the fact the parties' marriage was dissolved and respondent had not remarried, on the motion of respondent, the trial court struck Langford's testimony with regard to the value of the surviving spouse's annuity.

In its memorandum of decision, the trial court accepted respondent's valuation of the pension, but indicated its belief that respondent would get considerably more on retirement. This is a clear recognition of the difficulty in placing a present value on the pension based on the evidence adduced.

●■ Petitioner argues the trial court should have chosen either the "reserved-jurisdiction" approach or the "total-offset" approach. Respondent argues that neither of these is a method of valuation, but instead are methods of distribution once valuation is set. Respondent contends the trial court properly used the "total-offset" approach. This court's explanation in *In re Marriage of Benz* (1988), 165 Ill. App. 3d 273, 281-82, 518 N.E.2d 1316, 1320-21, indicates the differences between those two methods of distribution:

> "Decisions of this State have firmly established that pension rights, whether matured, vested, contributory or noncontributory, constitute property 'acquired' during the marriage under section 503 of the Act. (*In re Marriage of Hobbs* (1982), 110 Ill. App. 3d 451, 455, 442 N.E.2d 629, 632.) An employee-spouse's contractual right to a pension plan is thus marital property subject to division

under the Act to the extent such rights accrued during the marriage. (*In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 442 N.E.2d 557; *In re Marriage of Coram* (1980), 86 Ill. App. 3d 845, 408 N.E.2d 418.) Problems arising in this area have involved placing a present value on pension rights as well as determining the marital portion of those rights. There is no way the other spouse may be accorded some defined interest to a benefit without first determining its value to the employed spouse during the marriage. *In re Marriage of Evans* (1981), 85 Ill. 2d 523, 426 N.E.2d 854.

Courts have followed two basic methods in dividing these interests. The first, termed the 'reserved jurisdiction' method, allows the court to delay actual division of the pension by entering an order stating how it will be divided 'if, as and when' it is actually paid out. (*In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511.) This method is best employed where it is difficult to place a present value on a pension due to uncertainties regarding vesting or maturation. (78 Ill. App. 3d 653, 397 N.E.2d 511.) The second approach is referred to as the 'total offset' method and was the one utilized below. A trial court under this scheme must determine the actual value of the pension according to actuarial evidence, discounting an amount in light of the risk that the pension will not vest, discounting also to present value, and then determining the marital portion of that amount. (*In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300; *Hunt*, 78 Ill. App. 3d 653, 397 N.E.2d 511.) Usually expert testimony will be required, and the approach itself is most often utilized where retirement is imminent and there are sufficient other assets to allow an offset to the 'nonpensioner' spouse. *Wisniewski*, 107 Ill. App. 3d 711, 437 N.E.2d 1300."

As this court noted in *In re Marriage of Wiley* (1990), 199 Ill. App. 3d 169, 556 N.E.2d 809, the trial court has discretion in choosing the method to apportion the present value of the marital property interest in retirement benefits. The trial court here did not commit an abuse of discretion in choosing to use the total-offset approach. However, the value of the marital property interest in the pension was not arrived at properly.

■ Petitioner contends that, since this court has indicated there is a need for expert testimony about pension valuation, the trial court committed an abuse of discretion in refusing to accept her expert's testimony in light of the fact there was no contrary expert testimony. Although we do not necessarily agree that the trial court was required to

accept Langford's valuation since the bases for his estimation of present value of respondent's pension were, to some extent, successfully challenged on cross-examination, the trial court did indicate that the value was considerably more than respondent's contributions. We agree with this finding and, therefore, further find that it was an abuse of discretion to merely accept the amount of respondent's contributions as the value for the pension. As a result, the valuation and distribution of the pension will be reversed and the cause will be remanded for reconsideration on this question. On remand, after the trial court establishes the marital value of the pension, that property should be equally distributed between the parties.

●■ ■ The second issue is whether the trial court committed an abuse of discretion by setting maintenance at $400 per month for three years. Section 504 of the Marriage and Dissolution of Marriage Act (Act) sets out the factors to be considered by the court in determining whether maintenance is necessary and, if so, how much. (Ill. Rev. Stat. 1989, ch. 40, pars. 504(a), (b).) The court should consider the parties' financial and physical condition, the standard of living during marriage, and the duration of the marriage. (*In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859.) The trial court must not only answer the question of whether the party needs maintenance, but also whether the other party has the ability to pay. (*In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300.) *In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 916, 466 N.E.2d 925, 933, summarizes the law relative to awards of maintenance:

"Section 504 of the Act provides that the trial court may issue a maintenance order only if it finds that the spouse seeking it lacks sufficient property to provide for her reasonable needs, and is either unable to support herself through appropriate employment or is otherwise without sufficient income. (Ill. Rev. Stat. 1981, ch. 40, par. 504(a).) The Act further provides that the amount and duration of an appropriate maintenance award shall be 'as the court deems just' after consideration of all relevant factors including the financial resources of the party seeking maintenance and her ability to meet her needs independently (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(1)); the time necessary to acquire sufficient education or training to enable her to find suitable employment (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(2)); the standard of living established during the marriage (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(3)); the duration of the marriage (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(4)); the age, physical and emotional condition of both parties (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(5));

the ability of the spouse from whom maintenance is sought to meet his needs while yet meeting those of the recipient spouse (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(6)); and the tax consequences of the property division (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(7)). The propriety of a maintenance award, as well as the amount and duration thereof, are matters which lie within the discretion of the trial court, for whose judgment we will not substitute our own absent an abuse of that discretion which occurs 'only where no reasonable man would take the view adopted by the trial court.' (*In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 508, 436 N.E.2d 228, 232.)"

In *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 269, 511 N.E.2d 156, 166, this court further commented:

"While an award may be for a definite time frame, it should not be based on speculation as to the future conditions, but on circumstances disclosed by the evidence. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 351, 461 N.E.2d 447, 456.) Where the court has specific evidence regarding educational background, present educational pursuits, and income at the time of dissolution, there is sufficient evidence to set a specific period of time for maintenance. *In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 719, 437 N.E.2d 1300, 1306.

Maintenance for a limited period is appropriate where the spouse is employable at an income not overly disproportionate from the standard of living established during the marriage. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 465, 426 N.E.2d 1087, 1096.) Conversely, where the spouse is not employable or is employable only at a low income, as compared to the previous standard of living, permanent maintenance would be appropriate.

*** [The ex-wife] does have an affirmative obligation to seek appropriate employment and to make a good-faith effort· to become financially independent. *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748."

Three parcels of real estate owned by the parties were sold: the marital residence, a commercial property in which petitioner had previously operated an antique and gift shop, and a duplex. The net proceeds from the sale of the real estate, divided equally, netted each of the parties approximately $116,100 ($94,000, $9,600, and $12,500, respectively).

By agreement, the parties divided all the household furnishings and appliances. In addition, the inventory of the gift shop sold for approximately $861 and was divided equally. The respondent received additional

personal property assets in the amount of $7,205. In total, the trial court's distribution to the respondent amounted to $123,735.50 and the pension valued at $25,851.61 or a total of $148,587.11. The petitioner received a 1985 Mercury automobile valued at $4,539 and her IRA valued at $36,378.78, which, when added to her distribution of the real estate sales proceeds, amounted to $157,017.78. The trial court also allocated the unpaid marital debts in the total amount of $8,233.83, the respondent to pay the petitioner 50% of that debt. In addition, the respondent was directed to pay petitioner $300 as an arrearage for utility bills, and previously paid marital debts were allocated between the parties, with the total reimbursement of the respondent to the petitioner amounting to $4,345.33.

Petitioner's testimony at the January 16, 1990, hearing indicated she was currently renting a house in which she and her 18-year-old son, Paul, reside. Paul is a full-time student at Lincoln Land Community College and works part time. She is employed working 20 to 25 hours per week managing a booth at a mall. She is paid $6 per hour. She also has craft items such as cotton afghans, lace collars, lace table cloths and Christmas decorations which she makes and sells at the store. The owner of the store gets 15% of the sales. In November and December 1989, petitioner earned $800 gross from these sales. Deducting her costs involved, she estimates she netted around $400. The sales in January had not kept pace with those in November and December, dropping about 75%. In January she also began selling Avon products.

■ Based on an examination of the factors listed in section 504 of the Act, the award of maintenance was not an abuse of discretion. Although the parties had a marriage of relatively long duration, petitioner has resources to meet her needs independently, and these resources will be increased after the trial court revalues and redistributes respondent's pension. She was 46 years old at the time the trial court ordered maintenance and has in the past been employed as a bookkeeper for 21 years and self-employed at various entrepreneurial endeavors. She has marketable skills. There was no evidence of any physical or emotional impediments to petitioner's employability. Any income she derives from employment will be supplemented from the income generated by her investments of the monies received from the sale of marital assets. In addition, petitioner is not the custodian of the minor child, and has not yet been ordered to pay child support. It is clear respondent's ability to meet his needs and those of his minor son was also limited. During the three-year period for which petitioner will get rehabilitative maintenance, she will have the opportunity to acquire sufficient education or

training to increase her marketable skills in an effort to find employment which would provide a higher income.

Petitioner's primary complaint is that her lifestyle is not the same as it was. As petitioner points out in her brief, the resources of the parties dictate whether they can maintain their lifestyle after dissolution.

> "In some failed marriages, the parties are fortunate enough to have resources adequate to satisfy both of their reasonable needs in full. The spouse seeking maintenance would therefore be awarded the whole difference between her resources and her reasonable needs. But the Simmonses, like most divorced couples, do not have enough to go around. Living apart costs most couples more than living together. The court is unable to provide both parties with the standard of living they enjoyed during marriage; one or both have to take a cut. The court must apportion the deficit." (*In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 661, 409 N.E.2d 321, 328.)

In this case, the parties simply do not have enough assets for each to maintain their lifestyle following dissolution. Therefore, no abuse of discretion occurred in awarding rehabilitative maintenance of $400 per month for three years.

■ Finally, we consider whether the trial court committed an abuse of discretion in refusing to order respondent to pay petitioner's attorney fees. The award of attorney fees is also a matter of discretion which will not be overturned absent an abuse of discretion. Although the trial court may order one party to pay the other's attorney fees, the primary obligation for payment rests on the party on whose behalf the services are rendered. The trial court must consider the financial circumstances of the parties to ascertain if one ex-spouse has an inability to pay and the other ex-spouse has the ability to pay attorney fees incurred by the opposing party. Ill. Rev. Stat. 1989, ch. 40, par. 508; *In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 543 N.E.2d 119.

The affidavit of respondent's attorney shows fees and costs incurred and anticipated in the amount of $19,688.74. Petitioner's attorney fees and costs were $23,920.59 as of April 26, 1990. According to her amended financial affidavit, petitioner had already paid $11,654.64 of her attorney fees as of October 1989.

While petitioner need not be destitute in order to receive an award of attorney fees (*In re Marriage of Ziemer* (1989), 189 Ill. App. 3d 966, 546 N.E.2d 229), the respondent need not be destitute to avoid paying petitioner's attorney fees. Neither party's estate should be exhausted, nor their economic stability undermined.

■ Petitioner has demonstrated her ability to pay by already having paid about half of the fees. She does not ask that respondent be ordered to pay a portion of the unpaid remainder, but demands he pay all of the attorney fees, including what she has already paid. Respondent also has incurred about $20,000 in fees on his own behalf. While the trial judge did not expressly state he considered the parties' financial circumstances in refusing to award attorney fees to petitioner, clearly the parties' financial circumstances were considered because the court was ruling on property distribution and maintenance as well as attorney fees. The trial court determined that the attorney fees resulted from the parties' unwillingness to compromise. A party cannot enter into such a battle and expect to come out unscathed. While we recognize the purpose of the statute is to allow a spouse to contest the dissolution on an equal footing so that concerns about incurring large attorney fees will not coerce a litigant into conceding meritorious claims, it is an unreasonable expectation to anticipate that the trial court will automatically require the other party to pay such attorney fees regardless of one's conduct during the litigation. There are times when the failure to compromise is frivolous. The parties should have been aware of the expenses they were incurring in order to split up the limited pot they were contesting. The trial court found neither party was absolved from the responsibility of paying for his or her own fees. Since the trial court is in a much better position than is this court to make such a determination, we will not overturn the trial court's order with regard to attorney fees.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is reversed with regard to the valuation and distribution of the marital portion of respondent's pension, and the cause is remanded for further proceedings with directions. In all other respects, the judgment is affirmed.

Affirmed in part; reversed in part, and cause remanded.

GREEN, P.J., and KNECHT, J., concur.