*In re* MARRIAGE OF CINDY L. FLORENCE, Petitioner-Appellee and Cross-Appellant, and DOUGLAS L. FLORENCE, Respondent-Appellant and Cross-Appellee.

Fourth District   No. 4—93—0801

Argued March 8, 1994.—Opinion filed April 14, 1994.—Rehearing denied May 16, 1994.

Robert B. Goldman (argued), of Springfield, for appellant.

Eldon H. Becker (argued), of Grosboll, Becker, Tice & Smith, of Petersburg, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This appeal and cross-appeal involve post-dissolution of marriage proceedings between petitioner Cindy L. Florence and respondent Douglas L. Florence. On appeal, respondent raises seven issues, to wit: (1) whether the support payment provision in the judgment of dissolution was void; (2) whether the order to pay $250 toward the purchase of a clarinet for the parties' minor child was an abuse of discretion; (3) whether the trial court erred in ordering the payment of supplemental child support back to March 13, 1992, when petitioner had not filed a petition for modification of child support until January 15, 1993; (4) whether the trial court erred by failing to consider the amount of dependent and individual health and hospitalization insurance premiums paid by respondent in finding respondent's net income for child support purposes; (5) whether the trial court erred by not awarding respondent sanctions for discovery abuses; (6) whether the award of attorney fees was erroneous; and (7) whether a notice of appeal filed by respondent on November 16, 1992, was premature. In her cross-appeal, petitioner argues respondent should have been ordered to pay all of her attorney fees. We affirm. Only those facts necessary to an understanding of this court's decision will be summarized in this disposition.

The circuit court of Menard County dissolved the marriage of the parties in a judgment filed December 18, 1986. Respondent did not appear in court at that time and was defaulted. The judgment incorporated by reference an agreement between the parties. The rel-

evant portion of the agreement related to the child support respondent was to pay on behalf of the parties' minor child Wendy. At the time of the dissolution of marriage, Wendy was four years old. As to child support, the agreement provided as follows:

"That [respondent] will pay through the Clerk of the Circuit Court of Menard County, Illinois, the sum of $50.00 per week per child as and for child support and will provide medical insurance on behalf of said minor child. That any medical, dental, optical, pharmaceutical, doctor, hospital or other related medical or orthodontist expenses incurred on behalf of said minor child which are not paid by medical insurance is to be paid one-half ($1/2$) by [Petitioner] and one-half ($1/2$) by [Respondent]. That [Respondent] further agrees to pay to [Petitioner] as, and for child support, twenty per cent (20%) of any increase which he has in his wages, salary or earnings that occurs after November 1, 1986."

No appeal was taken from the judgment of dissolution.

The proceedings which led to this appeal began on March 30, 1992, when petitioner filed a petition for an order declaring respondent to be in indirect, civil contempt by having unilaterally reduced the amount of child support to $50 on or about March 16, 1992, after having complied with the original judgment until that time. The parties filed several additional pleadings which will be discussed later, as necessary. Eventually, on July 29 and 30, 1993, the trial court entered two orders. Because the trial court was uncertain as to whether the child support provision in the judgment of dissolution was void or merely erroneous, the trial court vacated an earlier order finding respondent in contempt. Petitioner was ordered to pay (1) $1,012 for past-due child support for the period from March 13, 1992, through January 14, 1993 ($23 per week for 44 weeks); (2) $812 for past-due child support for the period from January 14, 1993, through July 30, 1993 ($29 per week for 28 weeks); and (3) $79 per week after July 30, 1993. Respondent was denied a Federal income-tax exemption for the payment of support on behalf of Wendy and was ordered to pay $1,000 of petitioner's attorney fees. Respondent was also ordered to pay $250 toward the purchase of Wendy's clarinet, less any payments he had specifically made for that purpose.

■ Respondent first argues this court erred in dismissing an earlier appeal as premature. The notice of appeal was filed November 16, 1992. This court dismissed the appeal as premature. If respondent thought the order dismissing the appeal was erroneous, he should have appealed that order. The issue is not properly before this court in this appeal.

Respondent next contends the child support provision of the orig-

inal judgment was void. Referring to section 505(a)(5) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(5)), the trial court's order found that the amendment of section 505, effective in September 1985, invalidated the percentage provision relating to child support in the judgment. Effective September 23, 1985, Public Act 84—888 amended the Act by adding the requirement that a final order providing for the payment of child support must state the support level in a dollar amount and incorporated that provision into section 505(a)(5) of the Act. (Pub. Act 84—888, § 2, eff. September 23, 1985 (1985 Ill. Laws 5641, 5649).) Even before the amendment, this court questioned the appropriateness of a child support order which did not set the dollar amount level of support. (*In re Marriage of Wassom* (1988), 165 Ill. App. 3d 1076, 1082, 519 N.E.2d 1147, 1151, citing *In re Marriage of Uphoff* (1982), 110 Ill. App. 3d 608, 612, 442 N.E.2d 965, 967.) At the time the trial court entered the judgment of dissolution in this case, the statute did not authorize the entry of such an order. In *In re Marriage of Fahy* (1991), 208 Ill. App. 3d 677, 696-98, 567 N.E.2d 552, 563-65, the court suggested that the portion of the child support provision stated in a percentage of income may be deemed void, but concluded that the entire child support award was erroneous for other reasons.

■ Ordinarily, in determining whether a judgment is void, the analysis focuses on the court's subject-matter jurisdiction and the jurisdiction over the parties, and even if the trial court misconstrues or misapplies a statute that may be said to affect its jurisdiction, if the court had subject-matter jurisdiction and jurisdiction over the parties, the trial court's judgment was not void. (*Chicago Title & Trust Co. v. Mack* (1932), 347 Ill. 480, 484-85, 180 N.E. 412, 414.) A judgment is void not only when the court was without jurisdiction over the parties or the subject matter, but also when the court lacked the inherent power to make or enter the order, and such an order may be collaterally attacked. (*People v. Wade* (1987), 116 Ill. 2d 1, 5, 506 N.E.2d 954, 955; *People ex rel. Village of Winnetka v. Dorner* (1989), 181 Ill. App. 3d 25, 27, 536 N.E.2d 856, 857-58.) It has been stated that the circuit court has no inherent power in dissolution of marriage cases and the court's jurisdiction is conferred by statute. (*Smith v. Smith* (1929), 334 Ill. 370, 379-80, 166 N.E. 85, 88; *In re Marriage of Milliken* (1990), 199 Ill. App. 3d 813, 817, 557 N.E.2d 591, 594.) However, those cases considered property distribution. No case is cited to this court which held that the circuit courts have no inherent power in the area of child custody or support.

In *In re Marriage of Sheetz* (1993), 254 Ill. App. 3d 695, 627 N.E.2d

154, the court followed the reasoning that circuit courts have no inherent powers in any area related to dissolution of marriage proceedings and concluded that a child support order based on the percentage of the noncustodial parent's income was void. The court further concluded that an express waiver of error in the dissolution proceedings included in the parties' settlement agreement did not preclude such a result since the parties cannot contract away the court's responsibility to set child support in the child's best interests. Nor could such a waiver preclude modification of the child support. Ill. Rev. Stat. 1991, ch. 40, par. 502(f).

However, in *Sheetz*, the court did say it was an appropriate case for the circuit court to exercise its discretion to order retroactive child support in light of the parties' acts over several years in reliance on the void order. We decline to follow *Sheetz*. In *In re Marriage of Vernon* (1993), 253 Ill. App. 3d 783, 788, 625 N.E.2d 823, 827, this court stated:

> "Because of the disastrous consequences which follow when orders and judgments are allowed to be collaterally attacked, orders should be characterized as void only when no other alternative is possible. We reject the notion that with statutory proceedings any failure to comply with the statute is an action outside the subject-matter jurisdiction of the court. (*In re Custody of Sexton* (1981), 84 Ill. 2d 312, 319-22, 418 N.E.2d 729, 732-34 (failure to file affidavits required by statute does not deprive court of subject-matter jurisdiction).) Only where the legislature may be said to have intended a particular requirement to serve as a limitation on the authority of the court to act should such a limitation be imposed. (*In re Marriage of Bussey* (1984), 128 Ill. App. 3d 730, 733, 471 N.E.2d 563, 565 (question whether there were 'statutory conditions precedent'), *aff'd* (1985), 108 Ill. 2d 286, 294, 483 N.E.2d 1229, 1232-33.)"

The legislature did not expressly direct that orders for child support not set in dollar amounts are void. Had the legislature intended that result, it would have said so. As a matter of public policy, it would be imprudent to conclude that all such orders are void. Child support is for the benefit of the child, and the parties cannot deprive the child of such support by agreement. To declare the order in this case void would lead to the result that the parties could deprive the child of some or all of the child support by agreeing to a child support provision which would be unenforceable. Here, the child support was set by agreement of the parties. The trial court found the amount to be reasonable and incorporated the agreement into the original judgment of dissolution. Respondent complied with the order for more than five years, from December 18, 1986, to March 12, 1992.

█ The circuit court had subject-matter jurisdiction over the dissolution of marriage proceeding and over the parties. The question of whether the circuit court misapplied the statute in setting child support in the judgment of dissolution should have been attacked as erroneous in a direct appeal, but any error in applying section 505(a)(5) of the Act did not render the judgment void.

█ A related issue is whether the trial court erred in ordering payment of child support of $23 per week, back to March 13, 1992, when the petition to modify had not been filed until January 15, 1993. Under section 510(a) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 510(a)), a judgment for support may be modified only as to installments occurring after due notice by a party of the filing of a motion for modification and a showing of a substantial change in circumstances. Because we have determined the trial court's order of December 18, 1986, was erroneous and not void, the trial court did not improperly modify the judgment of dissolution, but was merely enforcing it. Respondent had been paying $73 per week when, in March 1992, he unilaterally reduced the child support payments to $50. No error.

█ Next, we address the issue of the propriety of ordering respondent to pay $250 for his child's clarinet. Respondent argues he had no notice of the issue being raised in the trial court and the trial court should not have allowed testimony concerning the clarinet on the issue of modification of child support.

The uncontradicted evidence was that respondent had voluntarily contributed 50% of fees incurred as a result of Wendy's activities such as volleyball, softball, and swimming lessons. In March 1992, a clarinet was purchased for Wendy, and respondent agreed to pay 50%. He stopped making voluntary payments in August 1992. The trial court ruled that this evidence was relevant because there was then pending a petition filed March 3, 1993, which asked for an increase in child support.

All expenses necessary for the support of the child, including her cultural activities, are relevant to assessing the amount of child support to be paid by respondent. Although the trial court may grant only such relief as is sought in the pleadings (*In re Marriage of Zukausky* (1993), 244 Ill. App. 3d 614, 618, 613 N.E.2d 394, 398), the issue before the trial court was support for the child. An order of the trial court directing that the noncustodial parent contribute to such an expense is justified on the basis that it is required by the best interests of the child. We find no abuse of discretion committed by the trial court as a result of including this amount in the order separate from and in addition to periodic child support payments. As an

alternative, the trial court could have merely increased the periodic child support payments to cover this amount. The respondent was put on notice by the pleadings that modified child support was sought. This was sufficient to allow the trial court to consider the payment for the clarinet even though the clarinet was not specifically mentioned in the pleadings.

■ The respondent also argues the trial court erred by failing to consider the amount of dependent and individual health and hospitalization premiums paid by respondent in finding respondent's net income for the purpose of assessing the proper amount to which to modify child support payments after January 15, 1993. Section 505(a)(3)(f) of the Act provides that, in determining the "Net income" for the purpose of assessing the appropriate amount of child support to be paid, dependent and individual health and hospitalization insurance premiums be deducted from the total income from all sources. Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(3)(f).

Respondent argues his premiums were $2,088, and his child support should only be $71 per month. It is respondent's position that, even though he did not testify in this case, there was sufficient evidence before the trial court to determine the amount of such premiums. He supports his position by referring to the fact that at the hearing counsel for both parties agreed that $73.46 was the appropriate amount of weekly child support.

We have reviewed the exhibits to which respondent refers. Petitioner's group exhibit No. 9 included three of respondent's pay stubs which do not specifically identify deductions from respondent's pay for dependent and individual health and hospitalization insurance. Petitioner's exhibit No. 7 was respondent's answers to petitioner's interrogatories. In response to interrogatories about how he determined to pay child support of $60 on January 2, 1990, $67 on December 6, 1990, and $73 on December 3, 1991, respondent merely stated he calculated 20% of his net income at which he arrived by subtracting Federal and State taxes and social security from his gross income. As further explanation, he attached photocopies of recreated payroll records for the periods ending December 22, 1990, December 21, 1991, and December 19, 1992. The trial in this case was conducted on May 14, 1993. These records were not current and did not show any amount which was currently being paid by respondent for dependent and individual health and hospitalization insurance. The trial court was not obligated to accept respondent's figure for such a deduction presented in the motion for reconsideration or to allow respondent to present evidence at the time of hearing the motion for reconsideration since this was not newly discovered evidence.

Instead, it was evidence about which respondent could have testified at trial if he chose to do so. No abuse of discretion has been demonstrated with regard to the trial court setting the child support payment at $79 per week. *In re Marriage of Carpel* (1992), 232 Ill. App. 3d 806, 815, 597 N.E.2d 847, 854.

■ The next issues to be addressed relate to attorney fees. Respondent contends he should not have been ordered to pay any attorney fees, and petitioner contends respondent should have been ordered to pay all her attorney fees. In *Carpel* (232 Ill. App. 3d at 832, 597 N.E.2d at 866), this court stated as follows:

"[A] court still has discretion to award attorney fees under section 508(a) of the Act when one party lacks sufficient financial resources to obtain or retain legal representation. (Ill. Rev. Stat. 1989, ch. 40, par. 508(a).) A trial court abuses its discretion in not awarding attorney fees under section 508(a) of the Act when the evidence reveals a great disparity in actual earnings and earning capacity. (*In re Marriage of Gable* (1990), 205 Ill. App. 3d 696, 700, 563 N.E.2d 1215, 1217-18; *In re Marriage of Edsey* (1990), 199 Ill. App. 3d 39, 57, 556 N.E.2d 552, 563.) The trial court can award attorney fees when the spouse seeking relief demonstrates (1) financial inability to pay, and (2) the ability of the other spouse to pay. (*Edsey*, 199 Ill. App. 3d at 57, 556 N.E.2d at 563.) Financial inability exists when payment would strip a party of his or her means of support and would undermine his or her economic stability, but it does not require the party to show destitution. *Gable*, 205 Ill. App. 3d at 700, 563 N.E.2d at 1218; *Edsey*, 199 Ill. App. 3d at 57, 556 N.E.2d at 563."

Payment of attorney fees is primarily the responsibility of the party for whom the services were rendered, and the trial court's order with regard to attorney fees will not be overturned on appeal unless it is shown to result from an abuse of discretion. *In re Marriage of Ziemer* (1989), 189 Ill. App. 3d 966, 969, 546 N.E.2d 229, 230.

In the hearing of May 14, 1993, Eldon Becker, petitioner's attorney, testified concerning his fees. He indicated petitioner was seeking to recover from respondent $3,687.92 for fees previously incurred, plus fees for that day's court proceedings. He testified to his rates and that his fees were reasonable and customary given his experience. Becker was cross-examined with regard to rates charged by other attorneys in the area and the nature of the services provided on the dates referred to on his bill for services, identified as petitioner's exhibit No. 6. Becker explained the complete itemization for his services was included on this exhibit and in an affidavit previously filed by petitioner on August 25, 1992, with regard to the contempt proceedings. Petitioner's exhibit No. 6 was admitted without objection.

The trial court found $1,491.50 of the fees to be documented, reasonable, and necessarily incurred as a direct result of respondent's unilateral reduction of child support. Respondent was ordered to pay $1,000 of the fees.

Respondent argues the award was not authorized because the trial court did not find him in contempt for failure to pay child support. (Ill. Rev. Stat. 1991, ch. 40, par. 508(b).) A trial court is not so restricted. (*Carpel*, 232 Ill. App. 3d at 832, 597 N.E.2d at 866.) He also argues there was insufficient specificity in the evidence for the trial court to decide on the reasonableness of the attorney fees. Respondent had an opportunity to cross-examine Becker and did not object to the admission of the exhibit. This argument is deemed waived and will not be considered.

With regard to the question of respondent's ability to pay, there was evidence that respondent and his wife Linda had filed a joint Federal income-tax return for the year 1991 showing an adjusted gross income of $39,900. It also showed respondent and his wife were entitled to a refund of $972. Another exhibit, a W-2 form, indicated that in 1992, respondent had gross wages of $19,792.29. Respondent did not testify in order to explain why he did not have the ability to pay.

As to petitioner's ability to pay, petitioner's gross income was $1,597 per month as shown on her financial affidavit. Her monthly payroll deductions included $127.14 for Federal taxes, $38.48 for State income taxes, $23.16 for social security, $20 for deferred compensation, $50 for credit union savings, and a mandatory deduction of $127.76 for retirement. Her monthly take-home pay was $1,210.46. She was also receiving the $50-per-week child support. She had $300 in the deferred compensation account and $800 in a savings account. Her monthly rent for the home in which she and Wendy resided was $175. She owed $8,000 on her 1989 automobile and had a car payment of $250 per month. She owed $300 for the clarinet and $900 to Mastercard. According to her affidavit, she had total monthly expenses of $1,571.70.

Based on this evidence, it was not an abuse of discretion for the trial court to decide that petitioner was able to pay some, but not all, of her attorney fees, and that respondent was financially capable of paying $1,000 of petitioner's attorney fees.

■ The final issue to be decided is whether the trial court erred by failing to impose sanctions on petitioner for discovery abuses. Respondent complains that petitioner subpoenaed from respondent's employer copies of documents showing wages paid to respondent and deductions from respondent's earnings. The subpoena, mailed on

December 17, 1992, required the appearance of D.H. Brown, of Springfield, Illinois, at Becker's office in Petersburg on December 22, 1992, at 10 a.m. A check for mileage was not attached. The trial court, on respondent's motion, struck the subpoena, denied the motion for sanctions, and allowed the reissuance of the subpoena with the provision that petitioner's employer would furnish the copies by mail.

Respondent does not argue that the material sought by the subpoena was not relevant to the issues before the trial court. Instead, respondent argues that the subpoena violated Illinois Supreme Court Rules 203, 204, 206, and 208 pertaining to the taking of depositions. (134 Ill. 2d Rules 203, 204, 206, 208.) Supreme Court Rule 204(a)(1) allows for the issuance of subpoenas directing persons to produce documents. It is unclear on the record in this case whether by the initial subpoena petitioner wanted to depose the respondent's employer or merely wanted to have the documents sent. The trial court corrected the confusion by striking the original subpoena and allowing the issuance of a second subpoena which could be satisfied by the employer mailing the documents requested to petitioner's attorney. The action taken by the trial court was consistent with the provisions and intent of Rule 204. This was not an abuse of the rules of discovery. See 134 Ill. 2d R. 219(d).

Moreover, the imposition of sanctions for the failure to comply with the rules of discovery is a matter within the trial court's discretion. In the absence of an abuse of discretion, a reviewing court will uphold the trial court's decision. (See *Johnson v. Owens-Corning Fiberglas Corp.* (1992), 233 Ill. App. 3d 425, 434, 599 N.E.2d 129, 135, *appeal denied* (1992), 147 Ill. 2d 627, 606 N.E.2d 1227.) No abuse of discretion occurred as a result of the refusal of the trial court in this case to impose sanctions against petitioner.

For the foregoing reasons, the judgment of the circuit court of Menard County is affirmed.

Affirmed.

COOK and LUND, JJ., concur.