DIANA PHELPS, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

Fourth District   No. 4—88—0571

Opinion filed June 28, 1989.

Diana N. Cherry, of Metnick & Barewin, of Springfield, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for respondents.

JUSTICE GREEN delivered the opinion of the court:

Section 7—102(A) of the Illinois Human Rights Act (Act) states that a person seeking relief from a civil rights violation shall file "a charge in writing *under oath or affirmation*" (emphasis added) with the Department of Human Rights "[w]ithin 180 days after the date" of the alleged commission of the violation. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(A).) Section 7—102 further provides that, upon receipt of such a charge, the Department shall give notice to any respondent to a charge, investigate the allegations, hold a fact-finding conference, and report to the Director of the Department, who shall, within 300 days or such extension agreed upon by the parties, determine whether to file a complaint with the Illinois Human Rights Commission (Commission). Section 7—102(G)(2) of the Act authorizes the person making the charge to file a complaint with the Commission within 30 days of the expiration of the time for the Department to make that decision if the Department has not done so. Ill. Rev. Stat. 1985, ch. 68, par. 7—102(G)(2).

The evidence here showed that no later than October 16, 1986, the Department received from petitioner Diana Phelps an *unverified* document charging respondents, the Department of Corrections (DOC), petitioner's employer, and Steven Horner, petitioner's supervisor with that employer, with a series of acts of sexual harassment (Ill. Rev. Stat. 1985, ch. 68, par. 2—101(E)), the last act of which occurred on May 1, 1986. This act allegedly took place less than 180 days before the Department's receipt of the document. The Department did not process the document as a charge within the 480 days after receiving the document. Within the last 30 days of that period, petitioner filed a complaint with the Commission making allegations similar to those in the previous document. DOC moved for a summary order (Ill. Rev. Stat. 1987, ch. 68, par. 8—106.1) dismissing the complaint for lack of jurisdiction of the Commission because the previous document which petitioner filed with the Department was not verified. After a hearing, an administrative law judge recommended entry of such an order. On June 28, 1988, the Commission entered a summary order dismissing the complaint for want of jurisdiction. Petitioner filed with this court for administrative review. Ill. Rev. Stat. 1987, ch. 68, par. 8—111(A)(1).

In dismissing petitioner's complaint, the Commission explained that, in *Pickering v. Human Rights Comm'n* (1986), 146 Ill. App. 3d 340, 496 N.E.2d 746, the court held the requirement of section 7—102(A) of the Act that a charge be filed with the Department within 180 days of a civil rights violation was a condition precedent to the

Commission's subsequent exercise of jurisdiction over a complaint. The Commission here reasoned that, similarly, the failure of a charge to meet the requirement of section 7—102(A) that it be "under oath or affirmation" must also be a jurisdictional requirement for the Commission's later consideration of a complaint. As the Commission noted, it had recently so held in *Gonzalez v. St. Anne's Hospital* (1988), ___ Ill. Hum. Rts. Comm'n Rep. ___ (HRC No. 1984CF1488).

In *Gonzalez v. Human Rights Comm'n* (1989), 179 Ill. App. 3d 362, 534 N.E.2d 544, the appellate court for the first district reversed the Commission's decision, holding that a charge filed with the Department within the 180-day period of section 7—102(A) need not be verified prior to the expiration of the 180-day period in order for the Commission to later acquire jurisdiction of a complaint concerning the same alleged violation. Rather, the court concluded that, when an unverified charge is filed within 180 days, "equitable principles" control a determination as to whether the Commission can later properly proceed. (*Gonzalez*, 179 Ill. App. 3d at 371, 534 N.E.3d at 549.) The opinion indicated a complainant would be barred from relief for failure to verify the charge if the complainant was guilty of *laches* in regard to that failure.

In *Larrance v. Human Rights Comm'n* (1988), 166 Ill. App. 3d 224, 519 N.E.2d 1203, this court followed *Pickering* and held that the statutory requirement for the filing of the charge with the Department was a jurisdictional requirement and, unlike a statutory period of limitations, could not be waived or tolled. As we subsequently amplify in more detail, we need not retreat from that position to decide this case consistently with *Gonzalez*. The filing of a charge puts in force the machinery tying a claimant to a particular claim within a short period of the alleged deprivation of rights and sets in motion a time schedule. The filing of the charge also begins a scheme of notices to parties respondent. The verification requirement merely serves as some protection to the parties charged from false claims.

This court has never decided whether the requirement for verification within the 180-day period is a condition precedent to subsequent jurisdiction by the Commission. We recognize arguments both ways. We further recognize different precedent between the districts of the appellate court of this State is permissible. (*People v. DeVoss* (1986), 150 Ill. App. 3d 38, 501 N.E.2d 840.) However, when an issue involves the jurisdictional concerns of an administrative agency from which all districts often sit in administrative review, we deem a difference in controlling precedent to be very undesirable. The decision

in *Gonzalez* is very credible. Acting in *comity*, we chose to follow *Gonzalez*.

The Commission contends the facts of this case are so different from those in *Gonzalez* that, putting the question of jurisdiction aside, petitioner was so dilatory as to justify the dismissal. The Commission's order did indicate the petitioner here was less deserving of equitable consideration than was the petitioner in *Gonzalez*. We do not agree the difference is controlling.

■ In this case and in *Gonzalez*, the petitioner (1) obtained from the Department a multipage document called a "complainant information sheet" (CIS); (2) had the document filled out and signed; and (3) returned the document to the Department within 180 days of the alleged civil rights violation. The first page of the CIS was headed "YOU MAY FILE A CHARGE." It admonished prospective claimants that the Department would help them but would have to get information from them with particular reference to whether the Department had jurisdiction. The first page ended its admonition with these words:

> "However, *if* it should happen that we counsel you that we do not believe that we have jurisdiction *or* that it appears unlikely that we can help you or that the organization has violated the law, based on what you tell us, YOU MAY, NONETHELESS, FILE A CHARGE WITH US. That is YOUR decision to make. It is possible that your filing a charge will result in its being dismissed because we do not have jurisdiction or because it is determined that the law has not been violated. But even if we counsel you that we do not have jurisdiction or that it appears that we will not be able to help you or that it appears that the law has not been violated, *YOU MAY FILE A CHARGE.*" (Emphasis in original.)

That page then contained a statement that the claimant had read the page along with places for signature and date. This page gave no indication that verification was required.

The other four pages of the document contained blanks for the person wishing to make a charge to fill out. The questions concerned information in regard to the claimant and the nature of the charge the claimant wished to make. The final page contained a single line for signature and no designation of a place for a notary public to certify to the verification by the person signing nor was any obvious space left for the imprinting of the notary's rubber stamp seal. Ill. Rev. Stat. 1985, ch. 102, par. 203—102.

The bottom one-third of the last page of the CIS located below

the signature line was headed by the word "NOTE." Thereunder appeared several admonitions, the following of which are significant:

> "The law requires that a charge be filed within *180* [emphasis in original] days from the date of the alleged discrimination. If you are returning *this form* by mail, make sure that *this form is post marked* no later than the *180th* [emphasis in original] day from the date this action was taken against you.
>
> \* \* \*
>
> *If your claim is accepted by the Department as a charge,* it will be typed on the Department's charge form and *returned to you for your signature and notarization.*" (Emphasis added.)

The last sentence of the foregoing was the only indication on the entire document that verification of a charge was required. That statement is couched in terms which suggest "notarization" was required only after the claim had been accepted by the Department. As that language appears after the statement of the requirement of filing within 180 days, the date of presentation of the document for acceptance could reasonably be understood by claimants as the date of filing, and the time for "notarization" could be interpreted to be at a later point after the CIS is accepted and returned to the claimant. As we will explain, the *Gonzalez* opinion indicated that was substantially the practice of the Department at that time.

The undisputed testimony in the instant case was that petitioner contacted her local union steward Robert Juhl who, in turn, contacted Chief Steward Liz Madden concerning petitioner's claim. Madden testified she was informed by an employee of the Department that petitioner should go to the Department, obtain a form, return it to the Department and "that there was [sic] 180 days to file the complaint from the time of the last incident." Madden further stated she obtained a CIS form of the type we have described and took it to Juhl. He testified petitioner filled out the form in his presence, and he then took it to Madden. Both Juhl and Madden testified they examined the form and decided it needed supplementation. Juhl testified he then supplied an addendum to the form and mailed it to Earline Christian at the Department on October 11 or 12, 1986. Juhl testified he had earlier talked to Christian. He recalled Christian had said she would review the form and then notify them if anything further could be furnished. Juhl testified Christian may have said she would type a charge upon receipt of the form and then mail it to petitioner for signature and notarization.

Department records were introduced which showed a receipt of mail from "Diane Sue Phelps" on October 16, 1986, and the mail was

given to Earline Christian. The latter testified she was the intake person for the Department. She said she drafted charges based upon information she received from complainants. She further indicated she kept daily records of her telephone calls in the course of her employment. She said her records showed she received a phone call from Liz Madden on September 29, 1986, and one from Robert Juhl on October 9, 1986. She did not have with her her records from October 16, 1986. However, she said she had no record that petitioner had filed a charge with her.

Christian further stated the CIS sheet which petitioner allegedly submitted did not constitute a "charge of discrimination." Rather, she said the information contained in such a document would normally be used to draft the actual charge. She said a perfected charge would have to be notarized. She acknowledged complainants *do not have access* to the actual charge form used. However, she said they could write it on ordinary paper, sign it and have it notarized, and it would be accepted as a charge. She also stated she drafted a formal charge in every case in which the Department had jurisdiction. If jurisdiction was lacking, she said she then notified the complainant by letter. Christian testified she could not recall ever talking with petitioner and had no record of doing so. Christian said she was certain she had never told petitioner she could do nothing about petitioner's claim.

Petitioner testified that, some time after her CIS form was mailed, she received a phone call from a woman at the Department. (She later recognized the woman's voice as belonging to Earline Christian.) She said the woman told her that, because DOC had held an internal employee review hearing on her supervisor, the Department could do nothing with her claim. Both Juhl and Madden stated petitioner informed them of the content of her telephone conversation with the Department. Petitioner stated that, after receiving this call, she did not pursue the matter further until she filed her complaint.

The evidence in *Gonzalez* differed from the situation here in that, there, petitioner filed a charge with the Department and a Federal charge with the Equal Employment Opportunity Commission. The latter charge was dismissed for lack of cause. However, the Department determined petitioner's charge was based on substantial evidence and filed a complaint. The Commission allowed a motion to dismiss the complaint because the charge had not been verified until seven days after the expiration of the 180-day period. In reversing, the appellate court noted the CIS forms did not provide for verification. Furthermore, it noted petitioner had taken a CIS form prepared by his attorney to the Department and left it there upon being told that person-

nel from the Department would type a charge and send it to him. No typed charge was sent to that petitioner before the expiration of the 180-day period. Evidence was presented there of a practice by the Department of having proceeded with over 5,000 unverified charges by sending the charges back to claimants for verification *after* the expiration of the 180-day period.

The *Gonzalez* court acknowledged the existence of Department rules which purport to allow verification of a charge after the expiration of the 180-day period by relating the information in the charge back to the date of filing the charge. Petitioner calls our attention to these rules here. They are:

(1) Department Rule 2520.360, which states:

"A *charge* or any part thereof may be amended by the complainant to *cure technical defects* or omissions, or to clarify or amplify allegations made therein, or to set forth additional facts or allegations related to the subject matter of the original charge, *and such amendments shall relate back to the original filing date.*" (Emphasis added.) 56 Ill. Adm. Code §2520.360 (1985).

(2) Department Rule 2520.350, stating:

"In the event the Department receives a written statement from an individual which *complies substantially* with Sections 2520.320 and 2520.330 hereof, *but which is not notarized or is lacking elements specified in Section 2520.340,* the Department may accept and docket the statement (or a refined version of it) *as an unperfected charge.* The Department shall notify the complainant in writing of the elements which must be supplied to perfect the charge." (Emphasis added.) 56 Ill. Adm. Code §2520.350 (1985).

(3) Rule 2520.320, providing:

"A *charge* shall be in writing and signed by the complainant, or by the Director in the case of a charge initiated by the Department, *under oath or affirmation* before a notary public or other person authorized by law to administer oaths or affirmations. Notary service shall be provided without cost at the Department's offices." (Emphasis added.) 56 Ill. Adm. Code §2520.320 (1985).

The Commission and DOC emphasize the obvious difference between this case and *Gonzalez.* There, the Department sent that petitioner a charge a few days after the expiration of the 180-day period, and he verified the charge and returned it. Here, petitioner has never verified a charge. However, the evidence indicates the equities of the

situation favor petitioner, and we do not deem her guilty of *laches*.

In attempting to aid prospective complainants, the Department apparently adopted procedures which instead confused them. Here, the procedures confused not only petitioner but also union stewards whose duties most likely had given them some experience with the problems associated with dealing with bureaucracies. As we have indicated, the CIS and the explanations apparently given by the Department could easily have been interpreted to mean the CIS was a charge which was to be presented within the 180 days, and subsequent verification was only a formality. The *Gonzalez* opinion stated this had been the practice of the Department. Here, the evidence showed that an employee of the Department held petitioner's CIS until after the expiration of the 180-day period, and no charge was ever prepared.

In *Gonzalez*, the record showed the petitioner was represented by counsel at an early date. Here, the record does not show when petitioner obtained counsel, but it does show conduct attributable to the Department which confused her well past the 180-day deadline. She then had only presented an unverified CIS to the Department. With hindsight, we can see she should have offered to verify that document, but we cannot seriously fault her for not having done so.

The reasons why we must reverse the order of the Commission which dismissed the complaint bear upon differences between the situation here and that in *Larrance* where we upheld a Commission order dismissing a complaint. The proceedings there were initiated under the then Fair Employment Practices Act (Ill. Rev. Stat. 1979, ch. 48, par. 851 *et seq.*), which was similar to the legislation involved here. However, at that time charges were not automatically accepted. The CIS form used was a general information sheet which the complainant completed. That form did not, as here, contain the information which might mislead a person filling out the form to conclude it was a charge. There the intake officer examined the CIS form and on a date prior to the expiration of the 180-day period, informed the complainant that the charge was not accepted and no charge would be filed.

■ The differences between *Gonzalez* and this case do require different remedies. There, the Department had accepted that petitioner's presented document as a charge, processed the charge, found the existence of probable cause, and filed a complaint before the Commission. The appropriate remedy there was for the Commission to be ordered to hear the complaint on its merits. Here, the document filed by petitioner has never been processed, and no finding as to probable grounds for relief has been made. Accordingly, the relief to which pe-

titioner is entitled is merely to proceed before the Department.

We reverse the Commission's order of dismissal of June 28, 1988, and remand the case to the Commission with directions to remand the cause to the Department with directions to either allow petitioner to verify her CIS and treat that document as a charge or to allow petitioner to file a verified charge. Petitioner is to be given a reasonable time to proceed. Whichever procedure is followed, the 300-day period of section 7—102 of the Act shall begin to run upon the verification by petitioner of her CIS or the filing by her of a charge. The Department shall be directed to process the document presented as a charge according to the provisions of the Act.

Reversed and remanded with directions.

McCULLOUGH, P.J., and LUND, J., concur.