*In re* MARRIAGE OF JOHN J. O'BRIEN, Petitioner-Appellant, and MAR-
GARET F. O'BRIEN, Respondent-Appellee.

First District (4th Division)   No. 1—91—1754

Opinion filed September 24, 1992.

William R. Dunn, of Oak Lawn, for appellant.

Albert Brooks Friedman, Ltd., of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

John O'Brien appeals from portions of a judgment for legal separation. He challenges the maintenance award granted to Margaret O'Brien, his wife for more than 50 years, as well as the assessment of a portion of her attorney fees against him. John also contends that the trial court exceeded its jurisdiction in dividing the parties' marital property during proceedings for legal separation, arguing that the court may only divide property pursuant to dissolution of marriage.

We conclude that the trial court did not abuse its discretion and had authority to enter the orders that it did.

BACKGROUND

Margaret and John were married in 1937. In September 1988 the parties separated when John moved out of the marital residence, an apartment. The record indicates he filed his petition for dissolution on August 24, 1988. Margaret then filed a counterpetition for legal separation. In her petition, Margaret requested maintenance and attorney fees. After a hearing in September 1989, John was ordered to pay his wife temporary maintenance of $850 per month, pending the final disposition of the parties' petitions at trial.

In the spring of 1991 the matter was called for trial. At that time, John voluntarily dismissed his petition for dissolution of marriage and agreed to a legal separation. The parties stipulated that John's net annual income was $45,000, or $3,750 per month. Margaret's net income in social security benefits was $399 per month, or $4,788 per year. In addition, the evidence revealed that John possessed nonmarital assets of more than $600,000 held in various stocks and bonds. The parties agreed that $55,000 in United States Treasury bills (T-bills) had been jointly owned by the parties for at least five years and that John had removed Margaret's name from them without her knowledge or consent. The remaining marital assets included a certificate of deposit in the amount of $20,000; stock valued at $16,000; and a $1,200 savings account, all of which were in John's possession and control. In fact, during the entire period of separation John held the marital assets and received the dividends and income therefrom, subject only to the $850 per month he paid as maintenance to Margaret.

At trial Margaret, who was 83 years old, testified that she had been married to John for 53 years. She had kept the house and

cared for the parties' one child. She was forced to use a walker because of severe arthritis in both knees. Her affidavit of monthly expenses, attached to the pretrial memorandum, lists $1,054, but that was increased to $1,114 because of increases in rent and utilities. Margaret testified, moreover, that her monthly income of $1,249 ($850 in maintenance and $399 in social security) was barely sufficient to survive on. She had a clothing budget of $25 per month, but she had to borrow from that to pay her electric bill. She said she would like additional money to help put her son's children through college. She requested an award that would increase her monthly income to the range of $1,500 to $2,000. She explained that she was unable to purchase clothing, shoes, or underwear. She could not afford to travel. During the marriage she had made annual visits to her family in Massachusetts. She had travelled abroad and throughout the United States, but since her separation she could not even afford public transportation to take her to church functions and to lunch with friends.

Margaret further testified that John was in exclusive possession and control of the marital assets, from which she received no dividends or income. She testified that he had repeatedly assured her in the past that all the financial assets were owned jointly and that her name was on them. John's attorney objected at that point, anticipating an argument in favor of dividing the property interests in specific assets. He argued that the court lacked jurisdiction to order any division of property in a separation proceeding. Margaret's counsel responded that his client was requesting division of the *possession* of such assets, not division of ownership. The court overruled the objection.

John O'Brien was 85 years old at the time of the hearing, a retired police officer. He admitted that he once had placed his wife's name on $55,000 in United States T-Bills, saying he did so to provide for her care if something happened to him. He claimed $665,000 in nonmarital assets (which included the $55,000 in T-bills), and testified that most of the nonmarital property was derived from gifts to him from other members of his family.

At the conclusion of trial the court ordered an increase in Margaret's maintenance to $1,600 per month. The court further ordered the transfer of the $55,000 in T-Bills back into joint tenancy, noting that they were a "gift to the marriage." The court ordered that Margaret should receive the income therefrom (approximately $367 per month), along with the interest from certain stock (approximately $100 per month). The T-Bills, along with certain stock

($16,000), a savings account ($1,200), and a certificate of deposit ($20,000), were found to be marital assets, with a total value of $92,000. The court ordered that the names of both parties be placed on these assets, to be owned in joint tenancy. John was awarded possession and income from the certificate of deposit and savings account, along with his nonmarital estate of $610,000. Finally, the court ordered John to pay $8,695 to Margaret's attorney, which incorporated an hourly noncourt rate of $175 per hour and court time of $225.

OPINION

I

John first argues that the trial court's award of $1,600 per month in maintenance is excessive and contrary to the manifest weight of the evidence. In support of his position he makes a rather novel argument. First he cites Margaret's testimonial admissions of frugality. Then he uses her thrift as justification for denying an increase of the amount of temporary maintenance on which she managed to subsist during the 2½ years the proceedings were pending.

Margaret lives in an apartment for which, at the time of trial, she paid $470 in monthly rent. Her electric bill was about $60 per month and she paid a woman $80 per month for household help. She was paying $70 per month for medication, although she did get reimbursement eventually for most of it. She said she would try to buy clothing on sale and if she had extra money she would buy some clothes, visit her sister, and help out her son. She would also get out more and see friends for lunch or coffee.

John, in contrast, lives in a retirement home that rents for $1,275 per month, inclusive of utilities. He has a car and, given his independent wealth, presumably has substantial discretionary income, unlike his wife. He contends, however, that the court erred in awarding Margaret more maintenance than she actually proved she needs. He cites section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 504(a)(1)), which allows for an award of maintenance if the spouse seeking it "lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs."

While section 504(b) lists a number of factors to be balanced by the court in awarding maintenance, such as the financial resources of the parties, the duration of the marriage, and the age and health of the parties, John chooses to emphasize the standard of living es-

tablished during the marriage as being the most significant in assessing a party's reasonable needs. (See *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.) According to John, the court abused its discretion because the court's "exorbitant award of maintenance" was not based on proof of her need for more money. He claims, "She would buy a few clothes and go to see her sister once every year or two." John adds that the parties have always lived frugally and continue to do so.

■■ Margaret's lifestyle, we think, continues to be much more frugal than John's. She testified that she uses the electric oven to help heat her apartment. We note a qualitative difference between the $470 apartment rented by Margaret and the one that is occupied by John. John has a car but Margaret cannot even afford a cab to meet friends for lunch. Margaret's paltry income, and therefore her budget, makes new underwear a luxury item. We emphatically reject the notion that her past inability to plan social excursions, buy clothes, and afford carfare means that she failed to "prove" reasonable need for such things.

In his brief, John asks, "Could a reasonable person possibly believe that an 83 year old woman who has severe arthritis and uses a walker, and who has always led and is continuing to lead a frugal existence, would change her lifestyle even if she won the Illinois lottery? The award of maintenance in the amount of $2,067 [$1,600 plus $467 in interest from the T-bills and certain stock] is outrageous."

In our opinion, if anything is outrageous it is John's insistence that the reward for frugality is poverty. His wife of half a century has been forced to eke out an existence on her modest allotment of funds while he has set himself up in a much more lavish manner. He left his wife behind in the $470-per-month rental apartment and moved himself to more expensive quarters, all the while retaining possession and control of the marital assets as well as a nonmarital estate of well over a half a million dollars. In his brief he criticizes the trial court for expressing sympathy for Margaret; we would find it odd under the facts of this case if the court had not.

We have reviewed the record and considered John's mathematical calculations of the parties' net income and their needs and expenses. We conclude that the trial court's comments and findings are well supported by the evidence and that the court's award of maintenance was not an abuse of discretion. *E.g., In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 227, 543 N.E.2d 119; *In re Marriage of Kristie* (1987), 156 Ill. App. 3d 821, 510 N.E.2d 14.

## II

Next, John challenges the basic power of the court to allocate property outside of a marital dissolution proceeding. He states that section 503(d) of the Act, which involves the classification of the parties' property as marital or nonmarital, only applies to proceedings for dissolution of marriage or declarations of invalidity of marriage, but not to proceedings for legal separation. (Ill. Rev. Stat. 1991, ch. 40, par. 503(d).) Section 402 of the Act, which applies to legal separations, does not provide for disposition of property. Ill. Rev. Stat. 1991, ch. 40, pars. 401(b), 402.

Citing to the original Historical and Practice Notes (Notes) that follow section 402 of the Marriage and Dissolution of Marriage Act (Ill. Ann. Stat., ch. 40, par. 402, Historical & Practice Notes, at 186-87 (Smith-Hurd 1980)), John contends that the trial court may not adjudicate property rights incidental to a judgment for legal separation.

The Notes do suggest that (contrary to earlier cases) the Illinois Supreme Court in *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382, foreclosed the ability of trial courts to divide property outside of dissolution of marriage. The Notes quote *Kujawinski,* which stated that "[o]peration of the term 'marital property' under the Act is not triggered until the time for dissolution." (71 Ill. 2d at 573, 376 N.E.2d at 1386.) Under this reasoning the parties' property cannot be deemed "marital" in nature, for purposes of division, until the time the marriage itself is dissolved. A legal separation does not dissolve the marriage.

*Kujawinski* did not involve a legal separation, however. Instead, the case involved broad constitutional challenges such as impairment and the obligation of contracts. In fact, the court remarked that the term " 'marital property' is defined 'only for the purposes of division on dissolution of marriage *or legal separation.*' " (Emphasis added.) (71 Ill. 2d at 572, 376 N.E.2d at 1386, quoting 9A U.L.A. §307, Commissioners' Note, at 492 (1973).) Of more significance, however, is the fact that John's argument ignores more recent cases that support the trial court's authority to divide property in legal separation actions when the parties, by their conduct, submit the property issues to the court.

According to the updated commentary in the current pocket part to the 1980 Smith-Hurd volume upon which John relies, when counterpetitions (for dissolution and for legal separation) are filed, they may be tried together. (See Ill. Ann. Stat., ch. 40, par. 402,

Supplement to Historical & Practice Notes, at 33 (Smith-Hurd Supp. 1992), citing *In re Marriage of Davenport* (1981), 92 Ill. App. 3d 675, 416 N.E.2d 88 (Parties may empower the court to adjudicate marital and nonmarital property rights even if the ultimate judgment is for legal separation).) Later cases reaffirm this principle. *In re Marriage of Leff* (1986), 148 Ill. App. 3d 792, 499 N.E.2d 1042; accord *In re Marriage of Lipkin* (1987), 163 Ill. App. 3d 1033, 517 N.E.2d 41 (Parties submitted evidence of their property to the court and could not later complain that the court lacked jurisdiction to dispose of the property).

■ We believe that *Davenport, Leff* and *Lipkin* are correctly reasoned. In the pending case, John filed for divorce and sought a declaration of both his nonmarital and marital property. His petition lists general types of assets, along with his designation of what was marital and what was not. Margaret countersued for separation and maintenance. The record indicates that the litigation dragged on for more than two years. Both sides submitted income and expense statements that necessarily reflected their entire financial picture. The parties submitted the maintenance and attorney fee issues to the court after failing to reach a settlement. Therefore, the mere fact that John withdrew his petition for dissolution on the day of trial and agreed to the separation judgment does not defeat the court's power, in setting Margaret's maintenance, to consider the property and income of each. Indeed, it is difficult to understand how the court could set a reasonable amount of maintenance without considering the assets, income, and expenses of the parties. The trial court found, based on John's admission and stipulation, that Margaret's name as joint tenant had been placed on the $55,000 in T-bills and later removed without her knowledge. The court found that the T-bills were a gift to the marriage and ordered that Margaret's name be restored to title and that she should receive the income from the T-bills. The court also allowed John to keep possession of the $20,000 certificate of deposit and receive the income from it, along with a savings account and some stock. John cannot point to a basic inequity in his wife's being allowed to hold some of the marital property in her possession when he has always enjoyed total control over all of the property.

We conclude that the trial court did not err in awarding possession of some of the jointly held property to Margaret.

## III

■ John also challenges the trial court's assessment of his

wife's attorney fees, all but $5,000 of which were charged to John. He claims that the attorney's fees were "outrageous and excessive" because the lawyer charged for travel time from his office in Burr Ridge to the Daley Center on 13 occasions. The total time for travel was approximately 18 hours, at the lawyer's noncourt billing rate of $175 per hour, for a total of $3,167.50. Another six or seven hours of cumulative telephone calls at the same rate totalled $1,155. According to John, the "only real court time, where there were contested hearings," were the temporary maintenance hearing and the trial, for a total of 4.5 hours. Court time was billed at a rate of $225 per hour and included time billed for status dates and continuances.

After the hearing the court subtracted $800 from the travel time and $315 from the court time and further subtracted the $5,000 that Margaret recalled paying her attorney. The total amount awarded was $8,695, which reflected the reductions and credits from the total bill of $14,810.

Although John maintains that the award is unreasonable, the record suggests that some of the time billed may be attributable to John's lack of cooperation. Although he filed for divorce in August 1988, seeking to be awarded his nonmarital property and a portion of the marital property, he delayed furnishing his wife with discovery of his assets. In fact, it was not until October 31, 1990, pursuant to court order, that John filed a list of assets, with his own designation of what was marital and nonmarital property. He went through three different lawyers during the 2½ years the matter was pending and did not withdraw his petition for dissolution until the date of trial. As far as the hourly rate charged, John's own attorney stated his belief that it was "all right."

While the amount of fees might appear high given what should have been a fairly simple case, the record indicates that John, from the beginning, has resisted giving his wife any more maintenance than required for barest necessity. The parties were unable to reach a settlement, even after the depositions and pretrial discovery were completed in late 1990. The trial stipulations indicate that the only asset in dispute as marital property was the $55,000 in T-bills. While John sought to withdraw his petition for dissolution on the day of trial, he challenged the court's jurisdiction to allocate the marital property. These facts indicate that the time incurred by Margaret's attorney in this case was not unreasonable. The trial court took into consideration John's challenge to his wife's attorney's travel time and court appearances in which no contested mat-

ters were argued. Accordingly, the court disallowed approximately $1,100 of the fee request. Margaret had paid $5,000, leaving an unpaid balance of $8,695. The trial court concluded that the fees incurred were fair, reasonable, and necessary to the representation of Margaret. (See *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.) Unless we can state that the trial court abused its discretion in making the award (see *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748 (reversing $16,000 award)), we must affirm.

Affirmed.

JOHNSON and McMORROW, JJ., concur.