*In re* MARRIAGE OF KAREN LISS, n/k/a Karen Fox, Petitioner-Appellant, and ALLEN LISS, Respondent-Appellee.

First District (3rd Division)   No. 1—92—3110

Opinion filed December 14, 1994.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Howard A. London, of counsel), for appellant.

No brief filed for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Petitioner Karen Fox, formerly Karen Liss, appeals the dismissal of her petition to enforce the child support provisions of a marital settlement agreement (the Agreement), incorporated September 8, 1989, by a judgment for dissolution of marriage (the Judgment), against her former husband, respondent Allen Liss. The Agreement granted petitioner custody of Louis, the parties' seven-year-old child. The Judgment required respondent to pay child support to petitioner in the amount of $100 per week or 20% of his net annual income, whichever is greater.

The petition to enforce the child support provisions sought redress for respondent's failure to pay part of the $100 per week owing petitioner or 20% of his annual income, which would exceed the $100-per-week amount specified. Additionally, the petition sought to require the payment of extraordinary medical expenses incurred on the minor's behalf totalling $1,035.

The trial court granted respondent's motion to dismiss the petition, finding the "20% provision" void and unenforceable according to section 505(a)(5) of the Illinois Marriage and Dissolution of Marriage Act (the Act). See 750 ILCS 5/505(a)(5) (West 1992).

Petitioner argues on appeal: (1) the trial court erred in refusing to enforce the court-approved terms of the Agreement; (2) the trial court also erred by ruling that the 20% provision was void and unenforceable in light of section 502 of the Act (see 750 ILCS 5/502(b) (West 1992)); and (3) respondent was precluded under the doctrine of *res judicata* from collaterally attacking the Judgment.

We reverse and file this opinion pursuant to Illinois Supreme Court Rule 23(a)(2), which dictates resolution by opinion of a case which "resolves, creates, or avoids an apparent conflict of authority within the Appellate Court." Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23(a)(2), eff. July 1, 1994.

Before beginning our analysis, we consider the background of the statute at issue. In 1984 the General Assembly enacted legislation requiring the imposition of guidelines in the computation of child support. Some courts subsequently entered judgment orders that were expressed only in percentages. (See, *e.g.*, *In re Marriage of Ingram* (1994), 259 Ill. App. 3d 685, 631 N.E.2d 386; *In re Marriage of Campbell* (1993), 261 Ill. App. 3d 483, 633 N.E.2d 797.) Such judgments apparently put the clerks into a frenzy since their computers were not programmed to accept information other than dollar amounts for child support purposes. Thus, back to Springfield in 1985 to amend section 505(a) to provide, "The final order in all cases shall state the support level in dollar amounts." See 750 ILCS 5/505(a)(5) (West 1992).

In debate in the House of Representatives, the measure's sponsor, Representative Myron Olson, explained that the new provision required that the court's order for child support state a dollar amount as opposed to a percentage of income. (84th Ill. Gen. Assem., House Proceedings, May 20, 1985, at 64 (hereinafter Debates).) Later in the proceedings, the sponsor clarified that the provision "was intended to help the clerk responsible for collecting payments not to be dealing in percentages and specific dollar amounts." (Debates, at 35.) Accordingly, the stated goal of this amendment was to require that an exact dollar amount be set forth in each judgment order. The Act did not address the court's jurisdiction or explicitly prohibit the practice of designating a percentage of the payor's income as the amount payable for child support so long as the final order in all cases sets the support level in dollar amounts.

Since the enactment of the amendment to the Act, courts have refused to enforce the court-approved terms of agreements which set forth the parent's responsibility for child support *only* as a percentage of his or her income. (See *Ingram*, 259 Ill. App. 3d 685, 631 N.E.2d 386; *Campbell*, 261 Ill. App. 3d 483, 633 N.E.2d 797.) This genre of cases represents the precise reason for the enactment of the 1985 amendment, *i.e.*, to avoid confusion in collecting and processing for distribution moneys owing for child support. Clearly, judgments which merely establish a percentage for child support fall within the ambit of the amendment to section 505(a).

A different question, however, is considered in the division of various recent appellate courts as to the implications of a provision which imposes the payment of a specific sum and also includes a percentage as a greater or lesser sum which might be payable in the future depending upon the happening of a stated condition: with regard to the facts at hand, whether 20% of respondent's income exceeds $100 per month.

One line of Illinois cases holds that a provision which sets forth the parent's responsibilities as a percentage of income, with a minimum payment expressed as a dollar amount, violates section 505(a) as amended. (See *In re Marriage of Sheetz* (1993), 254 Ill. App. 3d 695, 627 N.E.2d 154; see also *In re Marriage of Macino* (1992), 236 Ill. App. 3d 886, 603 N.E.2d 105 (support provision requiring parent to pay 20% of his net income with a minimum payment of $20 per week not void since entered before section 505(a) was amended).) For example, *Sheetz* recognized that child support is a creature of statute and that the Act does not otherwise permit the trial court to include in its order, by approving an agreement, any provisions for child support that the court could not order in the absence of the

agreement. (*Sheetz*, 254 Ill. App. 3d at 699.) The *Sheetz* court reasoned that the trial court lacked jurisdiction to enter an order partly based upon percentages because the statute did not authorize such action; therefore, the judgment was determined to be void. (*Sheetz*, 254 Ill. App. 3d at 699; *Macino*, 236 Ill. App. 3d at 888-89; see also *In re Marriage of Fahy* (1991), 208 Ill. App. 3d 677, 567 N.E.2d 552.) Such a holding was probably necessary since the time for appeal had long expired at the time the enforcement proceedings were being considered.

In the more recent case of *In re Marriage of Florence* (1994), 260 Ill. App. 3d 116, 632 N.E.2d 681, the fourth district candidly declined to follow *Sheetz*. The *Florence* court observed that in determining whether a judgment is void, the analysis usually focuses on the court's subject-matter jurisdiction and jurisdiction over the parties. (*Florence*, 260 Ill. App. 3d at 120.) Even if the trial court misconstrues or misapplies a statute which may be said to affect its jurisdiction, if the court had subject-matter jurisdiction and jurisdiction over the parties, its judgment was not void. (*Florence*, 260 Ill. App. 3d at 120, citing *Chicago Title & Trust Co. v. Mack* (1932), 347 Ill. 480, 484-85, 180 N.E. 412.) We agree with this more traditional view of jurisdiction.

The *Florence* court rejected the notion that any failure to comply with a statute is an action outside the subject-matter jurisdiction of the court. (*Florence*, 260 Ill. App. 3d at 121, quoting *In re Marriage of Vernon* (1993), 253 Ill. App. 3d 783, 788, 625 N.E.2d 823.) Only where the legislature may be said to have intended a particular requirement to serve as a limitation on the authority of the court to act should such a limitation be imposed. (*Vernon*, 253 Ill. App. 3d at 788, citing *In re Marriage of Bussey* (1984), 128 Ill. App. 3d 730, 733, 471 N.E.2d 563; see *Florence*, 260 Ill. App. 3d at 121.) As the *Florence* court observed:

> "The legislature did not expressly direct that orders for child support not set in dollar amounts are void. Had the legislature intended that result, it would have said so. As a matter of public policy, it would be imprudent to conclude that all such orders are void. Child support is for the benefit of the child, and the parties cannot deprive the child of such support by agreement. To declare the order in this case void would lead to the result that the parties could deprive the child of some or all of the child support by agreeing to a child support provision which would be unenforceable." (*Florence*, 260 Ill. App. 3d at 121.)

The Agreement at issue not only states a specific dollar amount for weekly child support payments, but it also provides for the parties'

minor child to receive additional income should his father's net annual income exceed the stated amount. We find a construction of the Act that does not enforce provisions which rely solely upon a percentage, but does enforce provisions with a minimum or "final" dollar figure, carries out the statutory goals of the legislative enactment. A similar result was reached in *In re Marriage of Olsen* (1992), 229 Ill. App. 3d 107, 593 N.E.2d 859, where a marital settlement agreement was given effect to require the husband to pay a stated amount of his income per month plus 20% of all bonuses received.

In agreeing with *Florence*, thereby turning away from *Sheetz*, we recognize that Representative Olson spoke of amending section 505(a) to ease the administrative and perhaps even ministerial burden upon clerks. For what slight policy considerations an intermediate court may make, we observe that Representative Olson's statement places computers as our masters rather than ourselves as the masters of the computers. Although we recognize there will be some difficulty in the enforcement of child support orders which provide for percentages of income over a set amount, the problems are certainly no greater than other provisions left to future adjustment or determination (*i.e.*, extraordinary medical expenses or college-related expenses). In the end, such orders will result in less litigation between the parties (as in the present case where the parties negotiated and agreed to the Agreement) and will better regulate their future expectation with the greatest benefit to the child.

The ability to provide for future adjustment of child support based upon the payor's improved circumstances becomes even more significant in view of section 510 of the Act, which requires a "showing of a substantial change in circumstances" to justify a modification of a child support order. (See 750 ILCS 5/510(a) (West 1992).) Under this judgment, to the child whose support is in question, an increase in the parent's income is all that need be shown without analysis as to whether the increase is "substantial" or a "change in circumstances." Judgments like that presented in the case at bar as well as *Florence* and *Olson*, which are expressed in dollar amounts but also provide for an automatic increase based upon guidelines which may be expressed as a fixed percentage, meet the statutory requirements of the 1985 amendment to section 505(a).

Since we find the child support provision at issue to be valid, we need not consider the remaining issue as to whether the doctrine of *res judicata* precluded respondent from collaterally attacking the Judgment.

For the foregoing reasons, we find respondent indebted to petitioner for child support in the amount of $21,475.70 for the years

1990 and 1991 and an additional $2,260.60 for March and April 1991 and $1,563.63 for May 1991 minus one payment of $866.66. We also direct respondent to pay petitioner $1,035 for Louis' extraordinary medical expenses.

The judgment of the circuit court is reversed.

Reversed.

RIZZI and CERDA, JJ., concur.