*In re* MARRIAGE OF JOHN P. FIELDS, Petitioner-Appellant, and DORIS E. FIELDS, Respondent-Appellee.

Fourth District    No. 4—96—0886

Argued May 14, 1997.—Opinion filed June 16, 1997.

Gregory E. Pelini (argued), of Champaign, for appellant.

Melissa M. McGrath (argued), of Thomson & Weintraub, of Bloomington, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

In July 1994, petitioner John Fields filed a petition for dissolution of his marriage to respondent Doris Fields. In May 1995, the trial court granted the dissolution and entered the final judgment on remaining issues on August 5, 1996. John appeals, arguing (1) the dissolution and supplementary orders of the trial court are void because no written stipulation waiving the two-year waiting period (750 ILCS 5/401(a)(2) (West Supp. 1995)) was filed and (2) the trial court abused its discretion in ordering him to pay $1,200 per month in maintenance. We affirm.

The parties were married in 1973. Two children were born during the marriage, Carmen in 1974 and Aaron in 1976. At the time of the July 1996 hearing on all ancillary matters, Doris was 45 years old and John was 48. Both parties were in good health.

The hearing on grounds for dissolution was held in May 1995. The testimony at the hearing indicated the parties had lived apart for approximately 11 months. The trial court, after finding irreconcilable differences existed between the parties, dissolved the marriage, stating "the parties have lived separate and apart for a period of time in excess of six months."

■ On appeal, John now argues, for the first time, this court should strike down the dissolution and supplementary orders of the trial court as being void, since no written stipulation waiving the two-year waiting period was ever filed pursuant to the Illinois Marriage and Dissolution of Marriage Act (Act). See 750 ILCS 5/401(a)(2) (West Supp. 1995) ("If the spouses have lived separate and apart for a continuous period of not less than 6 months ***, the requirement of living separate and apart for a continuous period in excess of 2 years

*may be waived upon written stipulation of both spouses filed with the court"* (emphasis added)). Relying on *In re Marriage of Robinson,* 225 Ill. App. 3d 1037, 588 N.E.2d 1243 (1992), John argues the written waiver of section 401(a)(2) of the Act is a statutory condition precedent to the trial court's obtaining of subject-matter jurisdiction in cases brought under the Act.

In *Robinson,* the husband sought dissolution of his marriage, and the wife appealed the granting of dissolution. Although she did not object to the husband's oral waiver of the two-year waiting period at trial, she argued on appeal the trial court was without jurisdiction to enter the dissolution order due to the lack of a written waiver. Agreeing with the wife, the *Robinson* court held:

"Where a trial court is hearing matters relating to the dissolution of a marriage, it is not acting within the unlimited jurisdiction conferred on it by the constitution but, rather, is limited to that granted in the [Act]. [Citation.] In addition, case law clearly states that the [Act] is to be strictly construed. [Citation.]

\*\*\* [W]e find that the legislature intended that a written waiver be filed before the court could obtain jurisdiction over the matter. Accordingly, since a written waiver was not filed with the court, we find that the court was without subject[-]matter jurisdiction to enter an order of dissolution." *Robinson,* 225 Ill. App. 3d at 1038, 588 N.E.2d at 1244.

However, both the first and fifth districts have refused to follow the third district's decision in *Robinson.* See *In re Marriage of Yelton,* 286 Ill. App. 3d 436, 442, 676 N.E.2d 993, 997 (1997) (refusing to find trial court lacked subject-matter jurisdiction due to allegedly insufficient evidence satisfying two-year waiting period, noting the reasoning of *Robinson* "has been soundly rejected"); *In re Marriage of Monken,* 255 Ill. App. 3d 1044, 1046, 627 N.E.2d 759, 760 (1994) (failure to file written stipulation waiving two-year waiting period does not render subsequent dissolution order void for want of subject-matter jurisdiction, refusing to follow *Robinson); In re Marriage of Jerome,* 255 Ill. App. 3d 374, 388, 625 N.E.2d 1195, 1206 (1994) (failure to bifurcate dissolution proceedings and hear issue of grounds first does not deprive court of subject-matter jurisdiction, refusing to follow *Robinson).* We agree with the *Yelton, Monken,* and *Jerome* courts and refuse to follow *Robinson.*

■ A judgment or order is void if the court that entered it lacked jurisdiction over the parties or the subject matter or if the court lacked the inherent power to make or enter the order involved. *In re Estate of Steinfeld,* 158 Ill. 2d 1, 12, 630 N.E.2d 801, 806 (1994); *People ex rel. Gibbs v. Ketchum,* 284 Ill. App. 3d 70, 76, 671 N.E.2d 1149,

1152 (1996). Subject-matter jurisdiction "does not mean simply juris-
diction of the particular case before the court but jurisdiction of the
class of cases to which the particular case before the court belongs."
*Jerome*, 255 Ill. App. 3d at 388, 625 N.E.2d at 1206. While under
earlier versions of our constitution subject-matter jurisdiction was
conferred by the legislature through statutory enactments (see *In re
Estate of Mears*, 110 Ill. App. 3d 1133, 1137, 443 N.E.2d 289, 293
(1982) (tracing the evolution of subject-matter jurisdiction and noting
"a full progression has been made from the purely legislative concept
of jurisdiction embodied in the 1818 Constitution to the plenary
concept now in force under the 1970 Constitution")), circuit court ju-
risdiction is exclusively constitutional in origin, except in the limited
area of administrative review (*In re Lawrence M.*, 172 Ill. 2d 523, 529,
670 N.E.2d 710, 714 (1996); *In re M.M.*, 156 Ill. 2d 53, 65, 619 N.E.2d
702, 709 (1993)).

■ Yet the legislature still retains some control over the subject-
matter jurisdiction of the circuit courts, albeit somewhat indirectly.
Under the Illinois constitution, circuit courts have original jurisdic-
tion in all "justiciable" matters, subject to limited exceptions not rel-
evant here. See Ill. Const. 1970, art. VI, § 9; *In re Marriage of Bussey*,
108 Ill. 2d 286, 294, 483 N.E.2d 1229, 1233 (1985); *In re Custody of
Sexton*, 84 Ill. 2d 312, 319-20, 418 N.E.2d 729, 733 (1981). Though the
legislature has no power to limit a court's constitutional jurisdiction
to hear a matter, it may, by way of statutory enactment, create a
"justiciable matter." *M.M.*, 156 Ill. 2d at 65, 619 N.E.2d at 710; *Board
of Education of Warren Township High School District 121 v. Warren
Township High School Federation of Teachers, Local 504*, 128 Ill. 2d
155, 165, 538 N.E.2d 524, 529 (1989). Where the legislature creates
rights or duties having no counterpart in common law or equity, a
justiciable matter is created. *M.M.*, 156 Ill. 2d at 65, 619 N.E.2d at
710; *Board of Education of Warren Township High School District
121*, 128 Ill. 2d at 165, 538 N.E.2d at 529; *Skilling v. Skilling*, 104 Ill.
App. 3d 213, 219, 432 N.E.2d 881, 886 (1982). Once a justiciable mat-
ter is created, the circuit courts obtain subject-matter jurisdiction
over such matters by way of the constitution. *M.M.*, 156 Ill. 2d at 65,
619 N.E.2d at 710. However, since the justiciable matter is statutory
in origin, the legislature may impose nonwaivable conditions prece-
dent to the courts' exercise of jurisdiction. *M.M.*, 156 Ill. 2d at 65-66,
619 N.E.2d at 710; *Mears*, 110 Ill. App. 3d at 1138, 443 N.E.2d at 293
(stating "the inquiry must be whether there exists a justiciable
controversy, and if so, are there any statutory conditions precedent
to judicial intervention"). As this court has explained, while the fail-
ure to comply with such conditions may result in what may be erro-

neously termed a "lack of jurisdiction," in reality the court suffers from "an inability to exercise jurisdiction because the court cannot waive the condition." *Mears*, 110 Ill. App. 3d at 1138, 443 N.E.2d at 293. See also *People ex rel. Brzica v. Village of Lake Barrington*, 268 Ill. App. 3d 420, 422, 644 N.E.2d 66, 68 (1994) ("In such a case, the legislature is not limiting or precluding the court's jurisdiction, but is merely defining the justiciable matter it has created so that certain facts must exist before a court can act in a particular case [citation], or grant the relief requested [citation]"); *Skilling*, 104 Ill. App. 3d at 219, 432 N.E.2d at 886.

Dissolution of marriage and collateral matters are entirely statutory in origin and nature. *In re Marriage of Henry*, 156 Ill. 2d 541, 544, 622 N.E.2d 803, 805 (1993); *In re Marriage of Snyder*, 269 Ill. App. 3d 848, 849, 646 N.E.2d 1263, 1264 (1995). When a court's power to act is set by statute, the court is governed by the rules of limited jurisdiction and must proceed within the strictures of the statute. *M.M.*, 156 Ill. 2d at 66, 619 N.E.2d at 710. John contends (and the *Robinson* court found) the two-year waiting period (or the written waiver thereof) of section 401(a)(2) of the Act is a statutory condition precedent to the trial court's subject-matter jurisdiction in this case. See *Robinson*, 225 Ill. App. 3d at 1038, 588 N.E.2d at 1244. We disagree.

True conditions precedent to a trial court's exercise of subject-matter jurisdiction are rare. Only where it is exceedingly clear the legislature intended a particular requirement to serve as a limitation on the authority of the court to act should a condition precedent to jurisdiction be found. *In re Marriage of Liss*, 268 Ill. App. 3d 919, 922, 645 N.E.2d 341, 344 (1994); *In re Marriage of Florence*, 260 Ill. App. 3d 116, 121, 632 N.E.2d 681, 685 (1994); *In re Marriage of Vernon*, 253 Ill. App. 3d 783, 788, 625 N.E.2d 823, 827 (1993). For example, where the legislature creates a substantive right unknown at common law and makes time an inherent element of the right, such a time restraint is a condition of liability and condition precedent to a trial court's exercise of jurisdiction. *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 366-67, 654 N.E.2d 1365, 1381 (1995). In dissolution of marriage matters, the 90-day residence requirement of section 401(a) of the Act is a statutory condition precedent to jurisdiction. *Vernon*, 253 Ill. App. 3d at 788, 625 N.E.2d at 827. See, *e.g., Arrington v. Industrial Comm'n*, 96 Ill. 2d 505, 508-09, 451 N.E.2d 866, 867 (1983) (when the circuit court hears cases on *certiorari* to the Industrial Commission, exhibition to the clerk of the circuit court of a receipt showing payment of the amount of the probable cost of the record is statutory condition precedent to jurisdiction); *Brzica*, 268

Ill. App. 3d at 423, 644 N.E.2d at 69 (statutory conditions precedent to jurisdiction in municipal annexation cases); *In re Estate of Sutera*, 199 Ill. App. 3d 531, 537, 557 N.E.2d 371, 375 (1990) (noting "[w]hile the legislature could still impose substantive conditions precedent to the exercise of jurisdiction after 1964, the only condition precedent to the exercise of jurisdiction in the case of will contests is that the petition be filed within the time limited by the statute after the admission of the will to probate").

■ Illinois courts have repeatedly refused to find *any* failure by a trial court, when proceeding under limited statutory jurisdiction, to comply with a statutory condition results in a void order or judgment. See, *e.g., Steinfeld*, 158 Ill. 2d at 15, 630 N.E.2d at 808 (1994) (holding failure to comply strictly with the statutory procedures of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1989, ch. 91$^1$/2, par. 1—100 *et seq.*) is procedural, not jurisdictional, error "despite the substantial liberty interests at stake in such a proceeding"); *In re W.D.*, 194 Ill. App. 3d 686, 691, 551 N.E.2d 357, 361 (1990) (holding the mandatory timely service requirement of section 4—3 of the Juvenile Court Act (Ill. Rev. Stat., 1987 Supp., ch. 37, par. 704—3(1) (now 705 ILCS 405/2—15 (West 1994))) is not a limitation on subject-matter jurisdiction); *Phelps v. Human Rights Comm'n*, 185 Ill. App. 3d 96, 98, 540 N.E.2d 1147, 1149 (1989) (finding a charge filed with the Department of Human Rights within the statutory 180-day period need not be verified prior to the expiration of the 180-day period in order for the Human Rights Commission to later acquire jurisdiction of a complaint concerning the same alleged violation). Nor does the mandatory nature of the statutory requirement necessarily render the requirement jurisdictional in the sense it cannot be waived. *Sexton*, 84 Ill. 2d at 319, 418 N.E.2d at 732; *De-Castris v. State Employees Retirement System*, 288 Ill. App. 3d 137, 142-43 (joinder requirement of section 3—107(a) of Administrative Review Law (735 ILCS 5/3—107(a) (West Supp. 1995)), although mandatory, is not jurisdictional and may be waived). Such failures are better characterized as procedural deficiencies, which do not divest the trial court of subject-matter jurisdiction.

It has been held the failure to file affidavits pursuant to section 610(a) of the Act (750 ILCS 5/610(a) (West 1994)) does not render a subsequent judgment void for lack of subject-matter jurisdiction (*Sexton*, 84 Ill. 2d at 320-21, 418 N.E.2d at 733); the failure to file notice in another state of a petition to change custody pursuant to section 511(c) of the Act (750 ILCS 5/511(c) (West 1994)) is procedural, not jurisdictional (*Bussey*, 108 Ill. 2d at 294-95, 483 N.E.2d at 1233); the filing of a fee petition for attorney fees pursuant to section 508 of

the Act (750 ILCS 5/508 (West 1994)) "goes to procedure and not subject[-]matter jurisdiction" (*In re Marriage of Pagano*, 181 Ill. App. 3d 547, 554, 537 N.E.2d 398, 402 (1989)); and a trial court's order of child support as a percentage of income rather than a dollar amount, contrary to the dictates of section 505(a)(5) of the Act (750 ILCS 5/505(a)(5) (West Supp. 1995)), does not render the order void for lack of jurisdiction. See *In re Marriage of Scott*, 286 Ill. App. 3d 1056, 1059, 678 N.E.2d 1, 3 (1996); *In re Marriage of Baggett*, 281 Ill. App. 3d 34, 38, 666 N.E.2d 850, 853 (1996); *Liss*, 268 Ill. App. 3d at 922-23, 645 N.E.2d at 344; *Florence*, 260 Ill. App. 3d at 121, 632 N.E.2d at 685; but see *In re Marriage of Sheetz*, 254 Ill. App. 3d 695, 700, 627 N.E.2d 154, 158-59 (1993).

■ We find no evidence the legislature intended the written stipulation requirement of section 401(a)(2) of the Act to be a limitation on the subject-matter jurisdiction of the trial court. There is little to distinguish this requirement from the affidavit requirement of section 610(a), which the supreme court in *Sexton* found to be merely a procedural requirement. See *Sexton*, 84 Ill. 2d at 320-21, 418 N.E.2d at 733. Just as failure to comply with the affidavit requirement in *Sexton* did not render the subsequent order void for lack of jurisdiction, the parties' failure to file a written waiver of the statutory waiting period of section 401(a)(2) did not affect the trial court's jurisdiction over the dissolution proceedings here.

We note this holding is consistent with the modern trend toward giving finality of judgments greater weight than validity of judgments (see *Monken*, 255 Ill. App. 3d at 1047, 627 N.E.2d at 760; Restatement (Second) of Judgments § 12, Comment *a*, at 117 (1982)), a concern this court clearly expressed in *Vernon*. See *Vernon*, 253 Ill. App. 3d at 788, 625 N.E.2d at 827. Such a concern is especially acute where, as here, the complaining party has participated in a suit to completion without objection to jurisdiction. See *In re Marriage of Noble*, 192 Ill. App. 3d 501, 508, 548 N.E.2d 518, 522 (1989) ("Where the parties have had an opportunity to present evidence concerning the child's best interest, it would be senseless to exalt form over substance and remand for failure to file a proper pleading or affidavit" pursuant to section 610(a) of the Act); Restatement (Second) of Judgments § 12, Comment *d*, at 120 (1982) ("Even if the issue of subject[-]matter jurisdiction has not been raised and determined, the judgment after becoming final should ordinarily be treated as wholly valid if the controversy has been litigated in any other respect" pursuant to the doctrine of claim preclusion).

It is difficult to comprehend how John can reasonably object to subject-matter jurisdiction at this juncture. He petitioned for dissolu-

tion. He alleged in his petition the parties had been living "separate and apart for a continuous period of not less than six months, *since 1987.*" (Emphasis added.) He participated without objection at the dissolution hearing in which testimony indicated the parties had lived apart for approximately 11 months. Most significantly, he *drafted the dissolution order*, pursuant to the trial court's request, which clearly stated "the parties have lived separate and apart for a period of time in excess of six months." See *In re Marriage of Stevens*, 183 Ill. App. 3d 160, 162, 538 N.E.2d 1279, 1281 (1989) (refusing to find court's order void where complaining party initiated custody modification proceeding and sat through allegedly improper proceeding without objection to court's jurisdiction). Considerations of judicial economy and simple justice require finding John waived any objection to the written waiver requirement of section 401(a)(2) of the Act. See *Sexton*, 84 Ill. 2d at 322, 418 N.E.2d at 734.

■ We next consider John's claim the trial court abused its discretion in ordering him to pay $1,200 per month in maintenance. John does not argue maintenance was unwarranted; rather, he argues the amount of the award was excessive. In its supplemental judgment order of August 6, 1996, the trial court made the following findings. The parties had been married for 22 years. Doris has a high school education and is employed full-time as a certified nurses' aide at a retirement center. Her net monthly income from this employment is approximately $780. She lives on real estate owned by her mother and pays no rent. Her monthly expenses were approximately $1,500. John has worked for the Metra Railroad for the past 23 years and earns $56,000 per year, which yields a net income of approximately $3,400 per month. The court found John's monthly expenses to be equal to those of Doris, approximately $1,500 per month. It is at this point John claims the trial court erred. He argues the trial court understated his monthly expenses and thereby overestimated his ability to pay. See 750 ILCS 5/504(a)(1), (a)(2) (West 1994) (in determining amount of maintenance, trial court must consider both "the income and property of each party" and "the needs of each party").

On appeal, John contends his monthly expenses were closer to $2,500. He bases this figure on his testimony he is currently paying $1,050 per month to reduce old debts. However, the record indicates the minimum monthly payments on these debts total nowhere near the $1,050 allegedly being paid monthly by John. John's financial affidavit lists minimum monthly debt payments totalling $440 per month, and John testified he was paying an additional $100 per month on back taxes he owed. Adding $540 to John's claimed monthly living expenses of $1,350 still leaves him over $300 in excess monthly

funds. While John may very well wish to pay off his debts rapidly, he cannot do so at Doris' expense.

John contends the $1,200-per-month maintenance award was excessive in light of Doris' income-expense disparity of only $700. However, although it is difficult from the trial court's order to determine the exact apportionment of marital assets and debts, the court may have felt Doris deserved higher maintenance in light of the property division. John does not argue he received a smaller portion of the parties' marital property, and the record shows John's "Tier One" railroad retirement benefits, which the trial court recognized it could not divide, totalled close to $70,000. Moreover, simply because a trial court's award of maintenance results in one spouse having a surplus of income does not automatically mean the court abused its discretion. When the Act refers to the "needs" of the spouse seeking maintenance (see 750 ILCS 5/504(a)(2) (West 1994)), it does not necessarily mean minimum needs. *In re Marriage of Gunn*, 233 Ill. App. 3d 165, 175, 598 N.E.2d 1013, 1020 (1992) (upholding maintenance award that resulted in $800 monthly surplus for wife). Further, a spouse who lived frugally during a marriage is not required to live frugally following dissolution where the other spouse's superior earning power justifies additional maintenance and a resulting surplus of income. See *In re Marriage of O'Brien*, 235 Ill. App. 3d 520, 524, 601 N.E.2d 1227, 1230 (1992) (holding past frugal lifestyle did not mean spouse failed to "prove" her reasonable post-dissolution needs, finding husband's implicit suggestion "the reward for frugality is poverty" to be "outrageous"). The trial court here ordered maintenance until December 31, 1998, after which it would be reviewable at the request of either party. We cannot say the court abused its discretion.

This court's decision in *In re Marriage of Wisniewski*, 107 Ill. App. 3d 711, 437 N.E.2d 1300 (1982), is distinguishable from the present case. In *Wisniewski*, this court found the trial court had abused its discretion in ordering the ex-husband to pay $600 per month in maintenance, where the ex-wife's income-expense disparity was $200 per month. However, there was evidence the ex-wife was acquiring skills that would soon allow her to cover her living expenses with her salary. *Wisniewski*, 107 Ill. App. 3d at 718-19, 437 N.E.2d at 1306. In addition, the *Wisniewski* court had already determined the case was to be remanded for valuation and division of the ex-husband's pension, which added to the need to reassess the amount of maintenance. *Wisniewski*, 107 Ill. App. 3d at 719, 437 N.E.2d at 1306.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.